**RIVERSIDE HOSPITAL, INC. d/b/a A.M.I. Riverside Hospital and American Medical International, Inc., Relator,**

v.

**The Honorable Margarito GARZA, Judge of the 148th Judicial District Court, Nueces County, Texas, Respondent.**

**No. 13–94–041–CV.**

Court of Appeals of Texas, Corpus Christi.

Feb. 28, 1995.

---

Thomas F. Nye, Linda C. Breck, Brin & Brin, Corpus Christi, Bruce E. Anderson, Brin & Brin, San Antonio, for Relator.

Rene Rodriguez, Corpus Christi, for Real Party in Interest.

Before SEERDEN, C.J., and DORSEY and HINOJOSA, JJ.

## OPINION

SEERDEN, Chief Justice.

This is a mandamus case. Relator contends the trial judge abused his discretion by ordering it to provide hospital records pursuant to requests for production made by Delma Vasquez, the Real Party in Interest. Relator objected to the production on the basis of privilege. After a hearing on a motion to compel, the trial court ordered Relator to produce the documents for *in-camera* inspection. After reviewing the documents and finding some privileged and some not, the court ordered them all to be subject to discovery.

On original submission, we determined that at the hearing on the motion to compel, there was a misunderstanding between the parties concerning the nature of the stipulation as it related to whether the documents were privileged. In the interest of justice, we abated the proceeding and ordered the trial court to hold a hearing to allow Relator an opportunity to present proof of the privilege to the court.

In compliance with this Court's order, the trial court held a hearing on Relator's claim of privilege. In addition to the documents themselves, which were submitted *in camera*, Relator filed with the trial court two affidavits to support its claim of privilege. One was from Mary Monte, the Administrative Assistant/Medical Staff Coordinator at Riverside Hospital. The other was from Dr. Ralph Palumbo, M.D., Chief of Staff at Riverside Hospital. Vasquez submitted no additional evidence.

After this hearing, the trial court again ordered Relator to produce full and complete responses to Vasquez's Requests for Production. The case is now before this Court for reconsideration.

Respondent contends that Relator waived any privilege because the documents which respondent requested were documents that had previously been disclosed in a suit styled *Alejandro R. Rocha, et. al. v. Elliot F. Monroe, M.D., and Riverside Hospital, Inc. et al.* In that case, the Rochas filed a motion to compel Riverside Hospital to produce various documents relating to their lawsuit against the named defendants. At the hearing on such motion, Riverside objected to the production of the documents on the grounds that the requested items were privileged. The trial court allowed the parties to confer on the privilege issue. Afterwards, Riverside's counsel informed the trial court that "the staff files and the credentialing of Dr. Monroe ... were turned over to Mr. Patterson [the Rochas' counsel] this morning." Counsel for Riverside also stated that the remainder of the items that the Rochas requested in their Requests for Production Nos. 2, 3, 4, 5, 9, 15, 16, and 17 were generated by the hospital committees and, therefore, privileged. The trial court granted the Rochas'

motion to compel in its entirety. Pursuant to the court's order, relator delivered all the documents to the attorneys in the *Rocha* suit.

## ARE THE REQUESTED DOCUMENTS PRIVILEGED?

The party asserting privilege has the burden of proof to establish the existence of the privilege. *Giffin v. Smith,* 688 S.W.2d 112, 114 (Tex.1985) (orig. proceeding). If the matter for which a privilege is sought has been disclosed to a third party, thus raising the question of waiver of the privilege, the party claiming the privilege has the burden of proving that no waiver has occurred. *Jordan v. Court Of Appeals For The Fourth Supreme Judicial Dist.,* 701 S.W.2d 644, 649 (Tex.1985) (orig. proceeding). In this mandamus, we hold that Relator had the burden to prove that the requested documents are privileged and that it did not waive the privilege.

The statutes creating privileges relevant to health-care providers pertain to the proceedings of two types of committees called "medical committees," found in sections 161.031–32 of the Texas Health & Safety Code, and "medical peer review committees," found in article 4495b of the Texas Revised Civil Statutes. Section 161.032 provides that records and proceedings of a medical committee are confidential and are not subject to court subpoena. However, the statute specifically exempts records made or maintained in the regular course of business by a hospital, health maintenance organization, or extended health-care facility. Article 4495b deals specifically with peer-review committees and protects all communications, proceedings, and records of a medical peer review committee from subpoena or discovery in an action. Thus, no records are exempted from the privilege because they are maintained in the regular course of business.

Mary Monte, Riverside's Administrative Assistant/Medical Staff Coordinator, stated in her affidavit that she was the person at Riverside who had responsibility for the maintenance and security of all documents, records, and proceedings relating to medical-staff credentialing, re-credentialing, and peer review. She further stated that Riverside was a health-care entity; *i.e.,* a hospital licensed pursuant to Chapter 241, Texas Health & Safety Code. Dr. Palumbo, Riverside's Chief of Staff, stated in his affidavit that he took part in the creation, review, and utilization of many of the documents at issue.

According to Monte and Dr. Palumbo, Envelope A contains documents generated by Riverside's credentialing committee, as well as documents submitted to that committee. Envelope B contains minutes of meetings of Riverside's Executive Committee and O.B. Committee. Envelope C contains reports of staff concerns, incident reports, and summaries concerning Dr. Monroe. Riverside's employees or members of its medical staff prepared the documents in Envelope C for submission to a Medical Peer Review Committee. Monte and Dr. Palumbo further declared that the O.B., Executive, and peer-review committees operated pursuant to written by-laws which Riverside's governing board had approved. Envelope E contains correspondence and documents relating to the Texas State Board of Medical Examiners' investigation of Dr. Monroe. All of these records are communications made to a hospital-medical-peer-review committee, or by the hospital-medical-peer-review committee or other authorized representative of Riverside to the Board of Medical Examiners.

## THE MEDICAL–COMMITTEE PRIVILEGE

In *McAllen Methodist Hosp. v. Ramirez,*[1] we stated that the statutory purpose behind a privilege for hospital-committee records and proceedings was to protect the important, but limited, policy of encouraging uninhibited discussion of events that were the focus of committee action or review. *Ramirez,* 855 S.W.2d at 197. In *Jordan,* the supreme court defined the terms "records and proceedings" under the privilege set forth in section 161.032 of the Texas Health & Safety Code to mean those documents generated by the committee in order to conduct an open and thorough review. *Jordan,*

---

1. 855 S.W.2d 195 (Tex.App.—Corpus Christi 1993, orig. proceeding).

701 S.W.2d at 648. The *Jordan* Court stated, in relevant part, that:

> In general, the privilege extends to documents that have been prepared by or at the direction of the committee for committee purposes. Documents which are gratuitously submitted to a committee or which have been created without committee impetus and purpose are not protected. In addition, the privilege extends to minutes of committee meetings, correspondence between committee members relating to the deliberation process and any final committee product, such as recommendations.

*Jordan,* 701 S.W.2d at 648.

■ The privilege does not extend to routine accumulative information despite the fact that these documents may eventually serve as evidence in committee deliberations. *Barnes v. Whittington,* 751 S.W.2d 493, 496 (Tex.1988) (orig. proceeding); *Ramirez,* 855 S.W.2d at 198. In *Barnes,* the court concluded that letters requesting information on credentials and experience of two doctors were routine administrative records prepared by the hospital in the ordinary course of business. The court also determined that documents which listed letters mailed and received by the hospital during the application phase were not privileged. A letter from an insurance company also constituted a gratuitously submitted document and was discoverable.

We find that the trial court erred in refusing to grant protection of certain items based on the supreme court's holdings in *Barnes* and *Jordan.* The documents which are privileged are minutes of the Executive Committee, O.B. Committee, and the Pediatric Committee. *See Jordan,* 701 S.W.2d at 648; *Ramirez,* 855 S.W.2d at 198. The medical-committee privilege would not protect many of the other documents in this original proceeding due to the *Barnes* decision.

### THE MEDICAL–PEER–REVIEW COMMITTEE PRIVILEGE

■ Article 4495b of the Texas Revised Civil Statutes applies to the records and communications of a medical-peer-review committee. *See e.g.* TEX.REV.CIV.STAT.ANN. art. 4495b, § 5.06 (Vernon Pamph.1994). When deciding whether this privilege protects the information which Riverside submitted *in-camera,* we must keep in mind that any claim of privilege is balanced with a party's right to obtain evidence. The law does not favor privileges.

The dispositive issues for us to address are 1) whether Riverside's committees met the requirements of a peer-review committee as defined in article 4495b, and 2) if so, what documents relating to what activities of the committees are privileged under article 4495b.

Article 4495b, section 1.03(a)(6) defines a medical-peer-review committee:

> "Medical peer review committee" or "professional review body" means a committee of a health-care entity, the governing board of a health-care entity, or the medical staff of a health-care entity, provided the committee or medical staff *operates pursuant to written bylaws* that have been approved by the policy-making body or the governing board of the health care entity and *authorized to evaluate the quality of medical and health-care services or the competence of physicians....*

TEX.REV.CIV.STAT.ANN. art. 4495b, § 1.03(a)(6) (Vernon Pamph.1994) (emphasis ours). Article 4495b, section 1.03(a)(9) defines medical-peer-review or professional-review action as:

> "Medical peer review" or "professional review action" means the evaluation of medical and health-care services, *including evaluation of the qualifications of professional health-care practitioners and of patient care rendered by those practitioners.* The term includes evaluation of the merits of complaints relating to health-care practitioners and determinations or recommendations regarding those complaints. The term specifically includes evaluation of;
>
> (A) accuracy of diagnosis;
>
> (B) quality of the care rendered by a health-care practitioner;

(C) reports made to a medical peer review committee concerning activities under the committee's review authority;

(D) reports by a medical peer review committee to other committees or to the board as permitted or required by law; and

(E) implementation of the duties of a medical peer review committee by its members, agents, or employees.

TEX.REV.CIV.STAT.ANN. art. 4495b, § 1.03(a)(9) (Vernon Pamph.1994) (emphasis ours). Article 4495b, sections 5.06(s)(1), (s)(3) provides:

(s)(1) Reports, information, or records received and maintained by the board [Texas State Board of Medical Examiners] pursuant to this section and Section 5.05 of this Act, including any material received or developed by the board during an investigation *or hearing, are strictly confidential. . . .*

\* \* \* \* \* \*

(3) In no event may records and reports disclosed pursuant to this article by the board to others, or reports and records received, maintained, or developed by the board, by a medical peer review committee, or by a member of such a committee, or by a health-care entity be available for discovery or court subpoena or introduced into evidence in a medical professional liability suit arising out of the provision of or failure to provide medical or health-care services, or in any other action for damages.

TEX.REV.CIV.STAT.ANN. art. 4495b, §§ 5.06(s)(1), (s)(3) (Vernon Pamph.1994).

■ A close reading of the above-mentioned statutes reveals that the functions and actions of a committee determine if it is a peer-review committee. *Any hospital committee may perform peer-review functions,* and when this occurs, the privilege of confidentiality expressed in article 4495b attaches.

In other words, the name assigned to a hospital committee is not dispositive.

■ A committee's function determines the protected status of its activities. If a committee was functioning as a committee to improve patient care and treatment through self-evaluation and critical review, the documents prepared by it are privileged. The evaluation and review must relate to activities or occurrences at the hospital so that corrective or preventative measures may be taken. *See Ramirez,* 855 S.W.2d at 199.

■ Mary Monte's and Dr. Palumbo's affidavits show that Riverside's credentialing committee had two functions: 1) evaluate the quality of medical and health-care services and the competence of physicians, and 2) grant or deny the privilege to practice medicine or to continue to practice medicine at Riverside. The O.B. Committee was authorized to evaluate the quality of medical and health-care services and the competence of physicians, including evaluation of the accuracy of diagnoses and the practice of obstetrics rendered by a health-care practitioner. The Executive Committee was authorized to evaluate the quality of medical and health-care services and the competence of physicians, including evaluation of the accuracy of diagnoses and the quality of care rendered by a health-care practitioner. The Medical Peer Review Committee was authorized to evaluate Dr. Monroe's competency, or the quality of medical and health-care services rendered by him.

We hold that article 4495b encompasses certain duties of the committees as explained in Monte's and Dr. Palumbo's affidavits. Therefore, the medical-peer-review-committee privilege attached to those committee actions which evaluated the quality of medical and health-care services or the competence of physicians.

Turning to whether specific documents are privileged, the language of article 4495b, sections 5.06(g) [2] & (j) [3] exempts all proceedings,

---

**2.** TEX.REV.CIV.STAT.ANN. art. 4495b, § 5.06(g) (Vernon Pamph 1994) provides, in relevant part:

Except as otherwise provided by this Act, all proceedings and records of a medical peer review committee are confidential and all com-

munications made to a medical peer review committee are privileged.

· · · ·

**3.** TEX.REV.CIV.STAT.ANN. art. 4495b, § 5.06(j) (Vernon Pamph.1994) provides, in relevant part:

records, and determinations of a peer-review committee and all communications made to the committee. While section 161.032 of the Health & Safety Code directs that only the records and proceedings of a committee are privileged, the language of article 4495b makes privileged *all* proceedings, records, determinations, and communications.

██ Adhering to those standards set out in *Barnes*, we hold that the *initial* credentialing information obtained by Riverside's credentialing committee is *not privileged.* When a physician initially applies for staff privileges, the credentialing committee determines whether he or she is qualified to practice at its hospital. The committee is not, at this point, examining or reviewing events that had occurred at the hospital in order to function as a self-evaluation or critical-review committee of its practices and proceedings. When the committee is determining who should comprise its staff, it is not conducting an internal evaluation of the institution; rather, it is only evaluating a *potential* applicant. Those documents, applications, inquiries, and recommendations regarding whether the credentialing committee should allow Dr. Monroe to practice medicine at Riverside are not privileged.[4]

██ In addition, Dr. Monroe's professional-staff application and accompanying recommendations, as well as the requests from other hospitals concerning Dr. Monroe's staff privileges at Riverside, the inquiries concerning his competence, Dr. Monroe's waiver and release to Riverside, and Riverside's replies to such requests, have no bearing on credentialing at Riverside and are not privileged. Any subsequent credentialing information

maintained by the committee is privileged. The latter information evaluated Dr. Monroe's performance while at Riverside. The information sought at this point was created with committee impetus.

██ In addition to committee minutes, Envelope B contains memos and correspondence relating to Dr. Monroe's medical practice at Riverside. All of these documents appear to have been created by committee impetus, or they are communications to a committee. The committee creating the documents and that receiving them were authorized by written by-laws to evaluate the quality of medical and health-care services or the competence of physicians.

██ The documents contained in Envelope C are privileged because they are records of or communications to a peer-review committee authorized by written by-laws to evaluate the quality of medical and health-care services or the competence of physicians.

██ The documents contained in Envelope E are correspondence and documents relating to the State Board of Medical Examiners' Investigation of Dr. Monroe. They are privileged pursuant to article 4495b, §§ 5.06(s)(1), (s)(3).

## DID RIVERSIDE HOSPITAL WAIVE THE PRIVILEGE?

██ In the case now before us, Relator presented the trial judge with the order previously entered in the *Rocha* case which stated, in relevant part, that "all documents pro-

---

Unless disclosure is required or authorized by law, records or determinations of or communications to a medical peer review committee are not subject to subpoena or discovery and are not admissible as evidence in any civil judicial or administrative proceeding without waiver of the privilege of confidentiality executed in writing by the committee. The evidentiary privileges created by this Act may be invoked by any person or organization in any civil judicial or administrative proceeding, unless the person or organization has secured a waiver of the privilege executed in writing by the chairman, vice-chairman, or secretary of the affected medical peer review committee.

4. As Justice Dorsey pointed out in *Ramirez,* we realize that policy concerns dictate in favor of privilege protecting this information. The privilege allows both the applicant and his or her former colleagues, professors, and employers to communicate freely to the committee. However, the information gathered during the application process does not call upon the committee to evaluate the types of services that the hospital is rendering, nor does it critically evaluate its staff members. Protection of this type of information would serve to shield from discovery any mistakes that a committee has made when negligently hiring a staff member. We believe that protecting this type of information does not enhance the purpose of the medical review process.

duced by defendant, RIVERSIDE HOSPITAL, INC., in response to Plaintiffs' Motion to Compel, pursuant to this order, are to be limited to use in the present suit and to the Plaintiffs, their counsel of record, and any witnesses in said cause."

The waiver rule is codified in the Texas Rules of Civil Evidence, as follows: "A person upon whom these rules confer a privilege against disclosure waives the privilege if (1) he or his predecessor while holder of the privilege *voluntarily discloses or consents to disclosure of any significant part of the privileged matter* unless such disclosure itself is privileged...." TEX.R.CIV.EVID. 511 (emphasis added). Rule 511 sets forth the circumstances under which disclosure constitutes waiver of privilege. Rule 512 is the converse of rule 511, limiting the types of disclosure that rise to the level of waiver. Rule 512 provides: "A claim of privilege is not defeated by a disclosure which was (1) compelled erroneously or (2) made without opportunity to claim the privilege." TEX. R.CIV.EVID. 512.

In the instant case, the disclosure of the documents sought had been disclosed only by court order to the plaintiffs in the *Rocha* case. As indicated in Rule 512(1), even if such order was erroneous, the disclosure did not defeat the claim of privilege. In *Jordan*, 701 S.W.2d at 649, the plaintiffs sought discovery of various hospital documents, including the papers of various hospital committees. A number of the requested documents had come into the possession of the Bexar County Grand Jury. The record was completely silent as to how the grand jury came into possession of the documents. The court held that the real parties at issue had failed to carry their burden to show that no waiver had occurred. *Jordan*, 701 S.W.2d at 649. In the mandamus now before us, it is clear that the only disclosure of the documents was pursuant to a court order.

We hold that Riverside did not waive any privilege that attached to the documents submitted for *in-camera* review that had been disclosed in the *Rocha* case.

Mandamus will lie to correct a discovery error only if 1) the discovery order constitutes a clear abuse of discretion, and 2) the

aggrieved party has no adequate remedy by ordinary appeal. *National Tank Co. v. Brotherton*, 851 S.W.2d 193, 196 (Tex.1993) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992) (orig. proceeding).

Accordingly, we hold that the only documents contained in the materials submitted to the *in-camera* inspection that are not privileged and that should be turned over to respondent are: a) those documents delivered to the *Rocha* plaintiffs, prior to Judge Blackmon's order; b) the initial application, inquiries, and recommendations considered in granting Dr. Monroe's privileges at Riverside Hospital; and c) the requests from other hospitals concerning Dr. Monroe's staff privileges at Riverside, inquiries concerning his competence, Dr. Monroe's waiver and release to Riverside concerning such inquiries, and Riverside's replies to such requests.

We conditionally grant the writ of mandamus. Mandamus will issue only if the trial court refuses to comply with the instructions of this opinion.