588 S.E.2d 418

STATE of West Virginia ex rel. Richard BROOKS, Petitioner,

v.

The Honorable Paul ZAKAIB, Jr., Judge of the Circuit Court of Kanawha County, Respondent.

No. 31042.

Supreme Court of Appeals of West Virginia.

Submitted March 11, 2003.

Decided June 23, 2003.

Albright, J., concurred in the result with opinion.

McGraw, J., dissented with opinion.

Mary McQuain, Esq., Stuart Calwell, Esq., Law Offices of Stuart Calwell, PLLC, Charleston, West Virginia, Attorneys for the Petitioner.

The Honorable Paul Zakaib, Jr., Judge of the Circuit Court of Kanawha County, Charleston, West Virginia, Pro Se.

Chanin Wolfingbarger Krivonyak, Esq., James D. McQueen, Jr., Esq., McQueen, Harmon & Murphy, L.C., Charleston, West Virginia, Attorneys for the Respondent, Rakesh Wahi, M.D.

Robert P. Fitzsimmons, Esq., Russell Jay Guthrie, Esq., Fitzsimmons Law Offices, Wheeling, West Virginia, Attorneys for Amicus Curiae, Robert P. Fitzsimmons.

J. Michael Benninger, Esq., Paul T. Farrell, Jr., Esq., Wilson, Frame, Benninger & Metheney, PLLC, Morgantown, West Virginia, Attorneys for Amicus Curiae, West Virginia Trial Lawyers Association.

Richard D. Jones, Esq., Michelle L. Barker, Esq., Flaherty, Sensabaugh & Bonasso, PLLC, Charleston, West Virginia, Attorneys for the Respondent, Charleston Area Medical Center, Inc.

William S. Druckman, Esq., Madonna C. Estep, Esq., Salsbery & Druckman, Charleston, West Virginia, Attorneys for Amicus Curiae, Salsbery & Druckman.

James C. Peterson, Esq., Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C., Charleston, West Virginia, Attorney for Amici Curiae, James C. Peterson and Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C.

DAVIS, Justice:

The petitioner herein, Richard Brooks [hereinafter referred to as "Mr. Brooks"], requests this Court to issue a writ of prohibition [1] against the respondent herein, the Honorable Paul Zakaib, Jr., Judge of the Circuit Court of Kanawha County. Specifically, Mr. Brooks desires this Court to prevent the circuit court from enforcing its De-

---

**1.** On petition to this Court, Mr. Brooks also seeks mandamus relief to compel the Circuit Court of Kanawha County to enter an order memorializing its ruling during the November 25, 2002, hearing underlying the instant petition and relief in prohibition to prevent the circuit court from enforcing its order sealing the transcript of said hearing. As to these two requests for relief, we find the first ground for relief in mandamus to have been rendered moot by the circuit court's entry of the requested order on December 18, 2002. *See* Syl. pt. 5, *West Virginia Educ. Ass'n v. Consolidated Pub. Ret. Bd.*, 194 W.Va. 501, 460 S.E.2d 747 (1995) (" 'Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court.' Syllabus Point 1, *State ex rel. Lilly v. Carter*, 63 W.Va. 684, 60 S.E. 873 (1908)."). Furthermore, because we are able to resolve Mr. Brooks' underlying issue regarding the availability to him of documents from the Grant County proceeding without resort to the transcript of the November 25, 2002, hearing, we deem that further discussion thereof is not necessary to our decision in this case. *See generally* Section III, *infra*. Therefore, we will treat Mr. Brooks' request for relief solely as a petition for a writ of prohibition.

cember 18, 2002, order whereby it sealed certain documents, from a related matter, that Mr. Brooks' counsel had obtained from the Circuit Court of Grant County pursuant to a Freedom of Information Act request.[2] Upon a review of the parties' briefs, appendices, and arguments herein, we grant as moulded the requested writ. To the extent that the peer review documents contained in the Grant County jury trial record (1)(a) are available from an original source other than the peer review process or (b) are no longer protected by said privilege as a result of Dr. Wahi's waiver thereof and (2) have not been sealed by that tribunal, the petitioner may access such documents and make use thereof in his medical malpractice action against Dr. Wahi and CAMC. *See generally* W. Va.Code § 30–3C–3 (1980) (Repl.Vol.1998). Whether or not such documents are exempt from the privilege or were sealed by the Grant County Circuit Court must be determined by the Circuit Court of Kanawha County.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The lengthy and complex factual and procedural posture upon which the instant original jurisdiction proceeding is based may be summarized as follows. In 1995, Mr. Brooks sustained serious injuries in a motor vehicle accident and was transported to Charleston Area Medical Center [hereinafter referred to as "CAMC"] to receive medical treatment. In the course of said treatment, Dr. Wahi surgically repaired a tear in Mr. Brooks' aorta. During post-operative care, it became apparent that Mr. Brooks could not move his lower extremities and that, either as a result of his traumatic injuries or the surgery he had undergone, he had been rendered a T–6 paraplegic. Thereafter, Mr. Brooks obtained counsel and, on January 10, 1997, instituted a medical malpractice action against Dr. Wahi and CAMC in the Circuit Court of Kanawha County.

Shortly after the incidents described above, Dr. Wahi left CAMC and moved to Grant County, West Virginia. At approximately the same time, CAMC undertook a peer review investigation of Dr. Wahi, due, in part, to the unfortunate outcome of Mr. Brooks' surgery and as a result of the unanticipated surgical outcomes of other patients treated by Dr. Wahi.[3] After the conclusion of such peer review proceedings, an article was published in the Charleston Gazette newspaper which allegedly re-printed verbatim the contents of certain peer review documents in spite of the privilege that usually attaches to such records.[4] In response to this article, Dr. Wahi filed a defamation action, in the Circuit Court of Grant County, against the Daily Gazette Company and CAMC claiming that the published information questioning his skill as a cardiothoracic surgeon jeopardized his ability to practice medicine in this State.

During the course of the Grant County proceedings, both Dr. Wahi and CAMC[5] introduced into evidence the peer review documents alleged to have been divulged in the newspaper article; these documents, as well as other peer review records, were also admitted into evidence by the circuit court and published to the jury. Ultimately, the jury concluded that Dr. Wahi had not proven the elements of his defamation claim and ruled in favor of the remaining defendant, CAMC. Although the peer review documents placed in evidence in support of the parties' respective positions were ostensibly protected by

---

**2.** *See* W. Va.Code § 29B–1–1, *et seq.* For further discussion of the West Virginia Freedom of Information Act and its relevancy to the case *sub judice,* see Section III, *infra.*

**3.** CAMC has since suspended Dr. Wahi's privileges at its hospitals in order to safeguard "the best interest of patient care." In addition, the West Virginia Board of Medicine is investigating Dr. Wahi's competency to continuing practicing medicine.

**4.** *See* W. Va.Code § 30–3C–1, *et seq.* For further treatment of the statutory peer review privilege under the facts of the instant case, see Section III, *infra.*

**5.** By order entered November 13, 2001, the Circuit Court of Grant County dismissed Dr. Wahi's cause of action against the Daily Gazette Company finding that he had failed to state a claim for defamation, against this defendant, upon which relief could be granted. *See* W. Va. R. Civ. P. 12(b)(6).

the peer review privilege following the conclusion of the jury trial,[6] there is no evidence before this Court to indicate that any party made a written motion to seal the record of the trial proceedings or that the Circuit Court of Grant County issued a written order placing such record under seal. Although not apparent from the party's appendices in the instant proceeding, Dr. Wahi and CAMC nevertheless maintain that the Circuit Court of Grant County sealed the subject trial record by verbal order.

Thereafter, on October 8, 2002, Dr. Wahi and CAMC moved for dismissal of Mr. Brooks' Kanawha County malpractice action due to failure to prosecute.[7] While defending this motion, Dr. Brooks' counsel filed a Freedom of Information Act [hereinafter referred to as "FOIA"] request,[8] on October 11, 2002, with the Circuit Clerk of Grant County to obtain information from Dr. Wahi's defamation action. Specifically, attorneys for Mr. Brooks requested

  a. The Complaint filed in Civil Action No: 00–C–61, Wahi v. CAMC filed in the Grant County Circuit Court;
  b. The Answer or Answers filed by CAMC in this matter;
  c. A transcript of the trial proceedings; [and]
  d. The docket sheet for this Civil Action [00–C–61][.]

Counsel further asked that

  [i]f access to these records [is] being denied pursuant to a Court Order, please provide a copy of that Order. Also please provide a copy of the Motion entered requesting the Court deny access to the record. If any other requested writings are withheld by your office, please provide a detailed description of the writings which the Court claims are exempt from disclosure and provide an itemized explanation specifying and indexing the exemption or exemptions of the West Virginia FOIA

your office maintains are the basis for exempting each writing from disclosure with the description of the writings withheld.

(Citations omitted).

In response to such request, the Grant County Circuit Clerk sent Mr. Brooks' counsel all of the requested documents except for the jury trial transcript because no transcript had yet been requested or prepared. Upon being apprised of this fact, counsel then requested copies of the electronic recordings of the Grant County proceedings and the exhibits therein, for which payment was tendered. During the fulfillment of this request, Mary Comer, the certified court reporter who had recorded the Grant County proceedings, discussed the release of such records with the Honorable Andrew N. Frye, Jr., Chief Judge of the Circuit Court of Grant County, who had presided over said trial. In her affidavit, Ms. Comer related that

  [i]n a conversation with Judge Frye of Grant County on or about the last week of October or first week of November of 2002, [I] was advised that any documents which were a part of the court record were to be considered public records because there was never any order entered to seal the records or make the[m] confidential.

As a result, copies of both the jury trial exhibits and electronic recordings of the proceedings were forwarded to Mr. Brooks' counsel, who had said recordings transcribed by another certified court reporter.

On November 25, 2002, the Circuit Court of Kanawha County held a hearing on CAMC's and Dr. Wahi's motions to dismiss Mr. Brooks' malpractice lawsuit for inaction and failure to prosecute his case. Prior to said hearing, counsel for Mr. Brooks filed the pleadings, exhibits, and trial transcript of the Grant County proceedings in the Circuit Court of Kanawha County in support of his

**6.** See W. Va.Code § 30–3C–3 (1980) (Repl.Vol. 1998) and discussion thereof in Section III, *infra*.

**7.** *See* W. Va. R. Civ. P. 41(b) ("For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant."). In the proceedings un-

derlying this matter, the defendants initially moved for dismissal pursuant to Rule 41(b) on October 28, 1999, which motion was denied by the Kanawha County Circuit Court by order entered March 2, 2000.

**8.** *See supra* note 2.

claims that Dr. Wahi had acted negligently in his treatment of Mr. Brooks and that CAMC knew of Dr. Wahi's alleged incompetence as a thoracic surgeon. By order entered December 18, 2002, the circuit court denied the defendants' motion to dismiss "finding that the plaintiff had engaged in sporadic activity since this Court ruled on an earlier motion to dismiss three years ago, and further finding that the harsh remedy defendants seek is not justified under the circumstances of this case." However, during the course of said hearing,

counsel for defendant Wahi made an oral motion to the Court, joined by defendant CAMC, to seal the transcript of the November 25, 2002, hearing in this case, as well as the recent pleadings and exhibits filed by the plaintiff prior to the hearing, which pleadings and exhibits make reference to Dr. Wahi and the trial exhibits and trial testimony in . . . *Wahi v. CAMC,* Civil Action No. 00–C–61, in the Circuit Court of Grant County, West Virginia. After hearing argument of counsel on that issue, the Court, over the objection of plaintiff's counsel, GRANTED Dr. Wahi's request and ordered that the records and the pleadings filed by the plaintiff which make reference to Dr. Wahi and the civil action in Grant County be *temporarily* placed under seal. Accordingly, the records and pleadings filed by the plaintiff which make reference to Dr. Wahi in the civil action in Grant [C]ounty, as well as the transcript of the November 25, 2002, hearing in this matter, are hereby ORDERED SEALED *UNTIL FURTHER ORDER OF THIS COURT AND UNTIL SUCH TIME AS THIS COURT HAS AN OPPORTUNITY TO HEAR ARGUMENT ON THE MERITS.*

(Emphasis added).

Prior to these subsequent proceedings contemplated by the circuit court, and before the court had issued its December 18, 2002, order, Mr. Brooks petitioned this Court, on December 16, 2002, for a writ of prohibition seeking to prevent the circuit court from enforcing its November 25, 2002, verbal orders sealing the Grant County records and the Kanawha County hearing transcript.[9] Albeit premature at the time of its initial filing,[10] we nevertheless considered Mr. Brooks' petition and issued a rule to show cause to evaluate the merits of his claim for relief.

## II.

### STANDARD FOR ISSUANCE OF WRIT OF PROHIBITION

The case presently before this Court comes to us by way of a request for a writ of prohibition. Remedies of this nature, being extraordinary in nature, are generally "reserved for really extraordinary causes." *State ex rel. Suriano v. Gaughan,* 198 W.Va. 339, 345, 480 S.E.2d 548, 554 (1996) (internal quotations and citations omitted). That said,

[t]he writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers.

W. Va.Code § 53–1–1 (1923) (Repl.Vol.2000). *Accord* Syl. pt. 1, *State ex rel. United Hosp. Ctr., Inc. v. Bedell,* 199 W.Va. 316, 484 S.E.2d 199 (1997). When, as in the case *sub judice,* the relator seeking such relief avers not that

---

9.  *See supra* note 1.

10.  We make this observation based upon the fact that the petitioner herein sought relief from a ruling of the circuit court that had not yet been memorialized in writing at the time he filed his petition seeking relief from this Court and that he requests relief to lift a protective order that the circuit court had not yet fully considered, much less granted. It is this Court's understanding that the delay accompanying the entry of said written order was not attributable to the lower court, but rather to the inability of the parties'

attorneys to agree upon the language thereof, and such defect has since been cured by the court's entry of its own order. We further understand the urgency with which Mr. Brooks was faced insofar as the circuit court had refused to stay the proceedings pending its consideration of the respondents' request for a protective order. Nevertheless, it would have been preferable to have had the circuit court's rulings upon both of these matters prior to the presentation of these issues for this Court's consideration and determination.

the lower tribunal lacks jurisdiction but that the presiding judge has exceeded the bounds of his/her authority, the writ of

> " 'prohibition [is used] ... to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.' Syllabus point 1, [in part,] *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979)." Syllabus point 1, in part, *State ex rel. DeFrances v. Bedell*, 191 W.Va. 513, 446 S.E.2d 906 (1994) [ (per curiam) ].

Syl. pt. 1, in part, *State ex rel. Charleston Mail Ass'n v. Ranson*, 200 W.Va. 5, 488 S.E.2d 5 (1997). Moreover,

> [i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). Having enunciated the standard of review applicable herein, we proceed to consider the merits of the parties' arguments.

## III.

## DISCUSSION

On petition to this Court, Mr. Brooks complains that the Circuit Court of Kanawha County erroneously sealed the record of the Grant County jury trial, which contained information pertaining to CAMC's peer review of Dr. Wahi, despite the fact that such records allegedly were not sealed and that he properly obtained them in response to a FOIA request. In support of his argument that he is entitled to review these records and use them in his medical malpractice action, Mr. Brooks contends that Dr. Wahi and CAMC waived any privilege attaching to these documents by voluntarily introducing them into evidence in the Grant County action and that they did not thereafter follow the requisite procedures to have such records placed under seal. Mr. Brooks further suggests that the resultant deprivation of his use of these records infringes upon his constitutional rights to free speech, access to the courts of this State, and due process. Dr Wahi and CAMC respond by claiming that their introduction of such documents during the Grant County jury trial did not waive their peer review privilege. They further reply that the Grant County Circuit Court issued a verbal order sealing the trial records and that its subsequent disclosure thereof in response to Mr. Brooks' FOIA request was improper. Finally, the respondents assert that the Kanawha County Circuit Court's order sealing the Grant County records does not impermissibly infringe upon Mr. Brooks' constitutional rights.[11]

We are called upon, in this proceeding, to determine whether Mr. Brooks is entitled to use the peer review information, which is ordinarily protected by a privilege attaching thereto, contained in the Grant County trial records in his Kanawha County lawsuit against Dr. Wahi and CAMC. To ascertain

---

11. We wish to thank the various Amici Curiae that have appeared in this case in support of petitioner Brooks. Their arguments and averments will be considered in the course of our consideration and decision of this matter.

whether this privilege exists to preclude Mr. Brooks from accessing these materials, we must consider whether the peer review privilege is applicable to the information in question; whether, despite the existence of the privilege, any exceptions apply to permit Mr. Brooks to review such documents; whether the respondents waived such privilege by introducing these materials into evidence and publishing this information to the jury in the Grant County action; and whether the records of such proceeding were sealed upon the conclusion of the Grant County litigation thereby prohibiting their disclosure to and use by Mr. Brooks' in his medical malpractice action.

██ The peer review privilege, which attaches to the records of a peer review organization, has its origins in W. Va.Code § 30–3C–1, *et seq.* W. Va.Code § 30–3C–3 (1980) (Repl.Vol.1998), which establishes said privilege, directs that

[t]he proceedings and records of a review organization shall be confidential and privileged and shall not be subject to subpoena or discovery proceedings or be admitted as evidence in any civil action arising out of the matters which are subject to evaluation and review by such organization and no person who was in attendance at a meeting of such organization shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such organization or as to any findings, recommendations, evaluations, opinions or other actions of such organization or any members thereof: Provided, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of such organization, nor should any person who testifies before such organization or who is a member of such organization be prevented from testifying as to matters within his knowledge, but the witness shall not be asked about

his testimony before such an organization or opinions formed by him as a result of said organization hearings: Provided, however, That an individual may execute a valid waiver authorizing the release of the contents of his file pertaining to his own acts or omissions, and such waiver shall remove the confidentiality and privilege of said contents otherwise provided by this section: Provided, further, That upon further review by any other review organization, upon judicial review of any finding or determination of a review organization or in any civil action filed by an individual whose activities have been reviewed, any testimony, documents, proceedings, records and other evidence adduced before any such review organization shall be available to such further review organization, the court and the individual whose activities have been reviewed. The court shall enter such protective orders as may be appropriate to provide for the confidentiality of the records provided the court by a review organization and all papers and records relating to the proceedings had before the reviewing court.

More succinctly,

W. Va.Code, 30–3C–3 [1980] .... grants a privilege to all the records and proceedings of a review organization, but no privilege attaches to information, documents or records considered by a review organization if the material is "otherwise available from original sources."

Syl. pt. 3, in part, *State ex rel. Shroades v. Henry,* 187 W.Va. 723, 421 S.E.2d 264 (1992).

██ In the case *sub judice,* it is undisputed that the documents at issue, which were introduced into evidence in the Grant County proceeding, are records that were generated during the course of CAMC's peer review of Dr. Wahi. *See generally* W. Va. Code § 30–3C–1 (1975) (Repl.Vol.1998) (defining "[p]eer review"). What remains to be ascertained, however, is whether Mr. Brooks is entitled to review and utilize this information in his lawsuit against Dr. Wahi and CAMC. Inherent in the plain language [12] of

12. " 'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syllabus Point 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968)." Syl. pt. 1, *Nicholas Loan & Mortgage, Inc. v. W. Va. Coal*

the peer review privilege itself are two mechanisms by which ordinarily privileged peer review documents are nevertheless amenable to disclosure. First, the privilege permits a party to "use in any civil action," W. Va.Code § 30–3C–3, "information, documents or records otherwise available from original sources," *id.* To the extent that the subject documents sought by Mr. Brooks may be obtained from sources extraneous to the peer review process, then, he is entitled to review and use such information in the prosecution of his malpractice action. *See* W. Va.Code § 30–3C–3; Syl. pt. 3, in part, *State ex rel. Shroades v. Henry*, 187 W.Va. 723, 421 S.E.2d 264. However, insofar as said materials are available solely from the peer review process, such records are not available to Mr. Brooks. *See* W. Va.Code § 30–3C–3; Syl. pt. 3, in part, *Shroades*, 187 W.Va. 723, 421 S.E.2d 264. In light of the limited record evidence available to this Court in the instant original jurisdiction proceeding,[13] we direct the Circuit Court of Kanawha County to determine the availability of the controverted information from sources other than the peer review process.

■ Second, the governing statute also permits the disclosure of otherwise privileged materials if the privilege has been waived:

> [A]n individual may execute a valid waiver authorizing the release of the contents of his file pertaining to his own acts or omissions, and such waiver shall remove the confidentiality and privilege of said contents otherwise provided by this section[.]

W. Va.Code § 30–3C–3. In this regard, we have held that

> [t]o effect a waiver of the privilege of confidentiality which attends information and records properly the subject of health care peer review under West Virginia Code §§ 30–3C–1 to –3 (1993), the Legislature has required that an individual must

formally indicate his intent to waive this confidentiality by executing a valid waiver. Syl. pt. 3, *Young v. Saldanha*, 189 W.Va. 330, 431 S.E.2d 669 (1993). *Cf. Terre Haute Reg'l Hosp., Inc. v. Basden*, 524 N.E.2d 1306, 1312 (Ind.Ct.App.1988) (observing that Indiana's statutory peer review privilege "provides that waiver of the peer review privilege can be effectuated only by written waiver" (citations omitted)). Without the ability to review the trial transcript in the Grant County proceedings, we cannot say with certainty that Dr. Wahi "formally" waived the peer review privilege as contemplated by our prior holding. *See* Syl. pt. 3, *Young*, 189 W.Va. 330, 431 S.E.2d 669.

■ Nevertheless, Dr. Wahi's actions in introducing these materials into evidence, publishing them to the jury, and relying upon them to prosecute his defamation action against CAMC indicate that he might well have effectuated an implied waiver of said privilege. *See Ara v. Erie Ins. Co.*, 182 W.Va. 266, 269, 387 S.E.2d 320, 323 (1989) ("Waiver may be established by express conduct or impliedly, through inconsistent actions." (citations omitted)); *Blue v. Hazel–Atlas Glass Co.*, 106 W.Va. 642, 650, 147 S.E. 22, 25 (1929) ("[A] waiver may be express or it may be inferred from actions or conduct[.]" (citation omitted)). Ordinarily, in situations such as the one presently before the Court, the recognition of an implied waiver is disfavored because of the accompanying infringement upon the right to confidentiality which the privilege was designed to protect. *See, e.g., Hoffman v. Wheeling Sav. & Loan Ass'n*, 133 W.Va. 694, 713, 57 S.E.2d 725, 735 (1950) ("A waiver of legal rights will not be implied except upon clear and unmistakable proof of an intention to waive such rights." (internal quotations and citation omitted)). *See also* Franklin D. Cleckley, I *Handbook on Evidence for West Virginia Lawyers* § 5–1(B), at 5–4 (4th ed. 2000) ("By creating privileges we acknowledge that other societal

---

*Co-Op, Inc.*, 209 W.Va. 296, 547 S.E.2d 234 (2001).

**13.** *Compare* W. Va. R.App. P. 14(g) (indicating that "[t]he record [in original jurisdiction proceedings] shall consist of the pleadings, the addenda, the appendices, depositions filed under Rule 14(e), and findings of fact made under Rule

14(f)) *with* W. Va. R.App. P. 4(c) (providing lengthy description of record required to accompany petition for appeal) *and* W. Va. R.App. P. 8 & 9 (describing, in greater detail, procedures for designating, reproducing, and filing appellate record).

values-such as privacy, the desire to encourage effective medical care ..., or governmental efficiency-sometime take precedence over the goal of ascertaining the truth in legal proceedings."). Where, however, a party entitled to such a privilege avails himself of the allegedly privileged information in such a way as to reveal its contents to third parties without regard for maintaining the confidentiality thereof, it may be said that such party has effectuated an implied waiver thereof. In effect,

> [i]mplied waiver nullifies a privilege whenever disclosure of a privileged communication threatens to vitiate the continued "confidentiality" of the privileged material or would, if the privilege were recognized, be "unfair" to an opposing litigant.

Comment, *Developments in the Law–Privileged Communications,* 98 Harv. L.Rev. 1450, 1629–30 (1985). *See also* Cleckley, *supra,* § 5–4(C), at 5–76 ("Most courts continue to state the rule of implied waiver in absolute form-any disclosure of a confidential communication outside a privileged relationship will waive the privilege as to all information related to the same subject matter."). *But see* 735 Ill. Comp. Stat. Ann. 5/8–2102 (1987) (West Main Vol.1992) (indicating that, under Illinois peer review privilege statute, "[t]he disclosure of any [peer review] information or data, whether proper, or improper, shall not waive or have any effect upon its confidentiality"); *Mulder v. Vankersen,* 637 N.E.2d 1335, 1339–40 (Ind.Ct.App.1994) (noting that, pursuant to Indiana peer review privilege statute, under which "[t]he peer review privilege may only be waived by the execution of a waiver in writing," "a breach of confidentiality does not cause the peer review *privilege* to be waived" (citations omitted)).

The case presently before us presents a unique situation. On the one hand, we previously have been reluctant to find anything other than a "formal" waiver sufficient to overcome the protections of the peer review privilege. *See* Syl. pt. 3, *Young v. Saldanha,* 189 W.Va. 330, 431 S.E.2d 669. On the other hand, the facts of the case *sub judice* are radically different than those with which we were faced in *Young.* In *Young,* wherein we

required a formal waiver of the peer review privilege, the physician and the hospital involved therein repeatedly requested the presiding court to enter protective orders to ensure the peer review documents at issue retained their confidentiality by remaining under seal. *See Young,* 189 W.Va. at 332 & 336, 431 S.E.2d at 671 & 675. To this end, we observed that "five distinct orders were entered for the purpose of protecting information from public disclosure. Additionally, ... both parties to the litigation 'consistently transmitted the pleadings to the circuit court with notations that the entire file was under seal.'" *Id.,* 189 W.Va. at 335 n. 9, 431 S.E.2d at 674 n. 9. In short, we concluded that the parties asserting the peer review privilege in *Young* "did everything in their power to preserve the confidentiality of the peer review records that were obtained." *Id.* Furthermore, there is no indication that the parties in *Young* sought to introduce such evidence during the underlying proceedings or to formally place such documents on the record therein.

By contrast, the parties in the instant proceeding have not been overtly diligent in seeking to maintain the confidentiality of the challenged documents. During the underlying jury trial, both Dr. Wahi and CAMC introduced these records as exhibits in support of their respective cases; the circuit court admitted them into evidence; and they were published to the jury. *But see In re University of Texas Health Ctr. at Tyler,* 44 Tex. Sup.Ct. J. 38, 41, 33 S.W.3d 822, 827 (2000) (per curiam) (recognizing that "[a]n involuntary production of [peer review] documents d[oes] not constitute a waiver" of the peer review privilege (citation omitted)); *Riverside Hosp., Inc. v. Garza,* 894 S.W.2d 850, 857 (Tex.App.1995) (same). In addition to actively relying on these presumedly confidential materials, the parties actively placed them into the record of the court proceedings, which, to the extent that the information before us permits us to make such an evaluation, were not closed to the public. Furthermore, unlike the parties in the *Young* case who so diligently and thoroughly sought to preserve the sanctity of the privileged documents by repeatedly requesting and receiving protective orders to keep such rec-

ords under seal, the parties in the instant proceeding took such few efforts to obtain a protective order that that issue, in itself, is disputed. Rather than having a record replete with written protective orders, and motions therefor, the indicia that a protective order was ever requested, much the less actually issued, in the Grant County proceedings remains sketchy at best and far from definitively certain.[14] In the absence of such scrupulous and guarded treatment of the documents claimed to remain under the rubric of the peer review privilege, we are less concerned about enforcing the spirit of this statutory protection when the parties in whom said privilege has been reposed appear to have cast it aside without regard for the consequences of their inaction. Rather, it would seem the more prudent course to follow would be to afford the allegedly privileged documents the same degree of protection that the parties holding said privilege accorded them by failing to exercise the necessary guarded caution requisite to preserving the sanctity of the privileged materials and ensuring that their confidentiality remained intact. Accordingly we direct the Circuit Court of Kanawha County to also resolve the issue of whether Dr. Wahi voluntarily or impliedly waived the peer review privilege attached to the materials at issue herein as that tribunal has before it the record evidence necessary to make a definitive determination thereof. To the extent that Dr. Wahi did effectuate such a waiver, said materials are available to Mr. Brooks for use in his Kanawha County medical malpractice action.

■ In summary, as to that portion of the governing statute recognizing that materials subject to the peer review privilege may nevertheless become available to third parties, we hold that, pursuant to the plain language of W. Va.Code § 30–3C–3 (1980) (Repl.Vol.1998), information, documents, and records ordinarily protected by the peer review privilege lose their specter of confidentiality and may be accessed by third parties when (1) said materials are "otherwise available from original sources" or (2) "an individual [has] execute[d] a valid waiver authorizing the release of the contents of his file pertaining to his own acts or omissions." Consequently, we grant as moulded Mr. Brooks' petition for a writ of prohibition and direct the circuit court to ascertain whether the subject materials are available from an original source extraneous to the peer review process or whether Dr. Wahi waived the peer review privilege attached to the subject materials thereby rendering them available to Mr. Brooks.

■ Despite our examination of the manner in which the protections of the peer review privilege may be obviated, there remains a final protective mechanism which, if it is in place, would preempt any disclosures heretofore permitted under the foregoing analysis. In the conclusory sentence of W. Va.Code § 30–3C–3, the Legislature mandates that

> [t]he court *shall* enter such protective orders *as may be appropriate* to provide for the confidentiality of the records provided the court by a review organization and all papers and records relating to the proceedings had before the reviewing court.

(Emphasis added). Given the plain nature of this language,[15] we hold that where the privilege encapsulating peer review materials has been lifted because such information is available from an original source or the privilege has been waived, such materials may still be rendered inaccessible if the tribunal in which such information was introduced or reviewed has entered a protective order in accordance with W. Va.Code § 30–3C–3 (1980) (Repl.Vol. 1998) to guard against their disclosure.

■ Thus, the question remains whether such a protective order was, in fact, entered by the Grant County Circuit Court. In the above-quoted statutory language, the Legislature directs that the presiding "court *shall* enter" a protective order or orders. W. Va. Code § 30–3C–3 (emphasis added). Ordi-

---

14. Indeed, we are so uncertain as to whether the Grant County Circuit Court issued a protective order, verbal or otherwise, that we must ask the Kanawha County Circuit Court to conduct a fur-

ther inquiry on this particular issue. *See* Section III, *infra*.

15. *See supra* note 12.

narily, the word "shall" has a mandatory, directory connotation. *See State v. Allen*, 208 W.Va. 144, 153, 539 S.E.2d 87, 96 (1999) ("Generally, 'shall' commands a mandatory connotation and denotes that the described behavior is directory, rather than discretionary." (citations omitted)); Syl. pt. 1, *Nelson v. West Virginia Pub. Employees Ins. Bd.*, 171 W.Va. 445, 300 S.E.2d 86 (1982) ("It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation."). However, the statutory directive thereafter qualifies its directive to said court by requiring the court to "enter such protective orders *as may be appropriate* to provide for the confidentiality of the" controverted materials. W. Va.Code § 30–3C–3 (emphasis added). Given this permissive language, it is apparent that the Legislature afforded the tribunal in which the peer review documents were subject to review some modicum of discretion to determine to what extent a protective order is warranted and the precise scope and effect thereof. Absent further guidance from the Legislature in this regard, we will refer to our customary rules governing the sealing of court proceedings. *See* Syl. pt. 4, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975) (" 'That which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms.' *Syllabus* point 14., *State v. Harden*, 62 W.Va. 313, 58 S.E. 715 (1907)."). *See also* Syl. pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W.Va. 525, 336 S.E.2d 171 (1984) ("Each word of a statute should be given some effect and a statute must be construed in accordance with the import of its language. Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning."); Syl. pt. 4, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("Generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use.").

Typically, court records are considered to be public documents. Thus, " '[u]nless a statute provides for confidentiality, court records *shall* be open to public inspection.' Syllabus Point 2, in part, *Richardson v. Town of Kimball*, 176 W.Va. 24, 340 S.E.2d 582 (1986)." Syl. pt. 5, *State ex rel. Garden State Newspapers, Inc. v. Hoke*, 205 W.Va. 611, 520 S.E.2d 186 (1999). This general accessibility to records of court proceedings is based upon the open courts provision of the West Virginia Constitution and the interpretation thereof by this Court. *See* W. Va. Const. art. III, § 17 ("The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay."); Syl. pt. 4, *State ex rel. Garden State Newspapers, Inc. v. Hoke*, 205 W.Va. 611, 520 S.E.2d 186 ("The open courts provision of Article III, Section 17 of the Constitution of West Virginia guarantees a qualified constitutional right on the part of the public to attend civil court proceedings."). From these humble constitutional origins, various statutes and procedural rules have further recognized the public's right to access court documents and proceedings. *See, e.g.*, W. Va.Code § 29B–1–2(3) (1977) (Repl.Vol.1998) (defining "judicial department[ ]" as "[p]ublic body" subject to the disclosure requirements of the West Virginia Freedom of Information Act); W. Va. Tr. Ct. R. 10.04 (permitting FOIA access to court files and records that constitute "public records"). *See also* Syl. pt. 1, *Daily Gazette Co., Inc. v. West Virginia Bd. of Med.*, 177 W.Va. 316, 352 S.E.2d 66 (1986) (recognizing, under W. Va.Code § 30–3–14(*o*) (1986) (Repl.Vol.1986), openness of Board of Medicine proceedings where there is made "a preliminary determination that probable cause exists to substantiate charges of disciplinary disqualification"). Nevertheless,

[t]he qualified public right of access to civil court proceedings guaranteed by Article III, Section 17 of the Constitution of West Virginia is not absolute and is subject to reasonable limitations imposed in the interest of the fair administration of justice or other compelling public policies.

Syl. pt. 6, in part, *State ex rel. Garden State Newspapers, Inc. v. Hoke*, 205 W.Va. 611, 520 S.E.2d 186.

■ In order to limit such public access by sealing court records in a particular proceeding, a special request must be made by the party seeking such protection, and the presiding tribunal must enter an order to that effect. Specifically, Rule 10.03(a) of the West Virginia Trial Court Rules directs that,

> [u]pon motion by either party named in any civil action, the court may limit access to court files. The order of limitation shall specify the nature of the limitation, the duration of the limitation, and the reason for the limitation. Upon motion filed with the complaint, accompanied by a supporting affidavit, limitation of access may be granted ex parte.

*Cf.* W. Va. R. Civ. P. 26(c) (describing procedure by which party may obtain protective order with regard to discovery matters). This requirement of a definite and specific order is based upon the longstanding principle recognizing that "a court speaks only through its orders." *State ex rel. Kaufman v. Zakaib*, 207 W.Va. 662, 671, 535 S.E.2d 727, 736 (2000) (citations omitted). *See also State v. White*, 188 W.Va. 534, 536 n. 2, 425 S.E.2d 210, 212 n. 2 (1992) ("[H]aving held that a court speaks through its orders, we are left to decide this case within the parameters of the circuit court's order." (citations omitted)). In other words, "[c]ourts of record can speak only by their records, and what does not so appear does not exist in law." Syl. pt. 3, *Hudgins v. Crowder & Freeman, Inc.*, 156 W.Va. 111, 191 S.E.2d 443 (1972). *Accord* Syl. pt. 4, *State ex rel. Mynes v. Kessel*, 152 W.Va. 37, 158 S.E.2d 896 (1968). *See also* Syl. pt. 5, in part, *Parkway Fuel Serv., Inc. v. Pauley*, 159 W.Va. 216, 220 S.E.2d 439 (1975) ("A court of record speaks only through its records[.]").

In the case *sub judice*, the parties concede that there is no written order whereby the Grant County Circuit Court sealed either the peer review trial exhibits or the jury trial transcript in which such documents were introduced and otherwise referenced. Mr. Brooks maintains that because there is no such written order, it may be presumed that no such order was ever issued and thus, the records he obtained from Grant County were properly the subject of his FOIA request. Responding to Mr. Brooks' argument, the respondents represent that, despite the absence of a written directive sealing the record of the Grant County proceedings, the circuit court nevertheless issued a verbal order to this effect. Because this Court recently held in *Moats v. Preston County Commission*, 206 W.Va. 8, 521 S.E.2d 180 (1999), that a verbal order enunciating a court's ruling is as effective as if said ruling had been memorialized in a written order, the respondents claim that the documents which Mr. Brooks seeks to use in his medical malpractice action against Dr. Wahi and CAMC are sealed, protected from disclosure, and unavailable to him.

We agree with the respondents' characterization of our recent holding in *Moats*. Specifically, we held in that case that

> [a]n oral order has the same force, effect, and validity in the law as a written order. In other words, the actual physical possession of a written order is not required to effectuate said order.

Syl. pt. 2, *Moats v. Preston County Comm'n*, 206 W.Va. 8, 521 S.E.2d 180. This ruling was based upon our similar holding that, "[g]enerally, an order is effective when a court announces it." Syl. pt. 1, *id.* Inherent in these rulings are the added considerations that the parties affected by a verbally-rendered order also be aware of its existence and the terms thereof. *See Moats*, 206 W.Va. at 12–13, 521 S.E.2d at 184–85. However, we are not convinced that *Moats* definitively resolves the query herein as to whether the Grant County records were actually sealed. Despite the respondents' representations that the circuit court entered a verbal order sealing the record of the Grant County proceedings, Mr. Brooks has submitted an affidavit wherein the court reporter who recorded the jury trial indicated that the Grant County Circuit Court had not entered a protective order. In her affidavit, the court reporter averred

> [i]n a conversation with Judge Frye of Grant County on or about the last week of October or first week of November of 2002,

[I] was advised that any documents which were a part of the court record were to be considered public records because there was never any order entered to seal the records or make the[m] confidential.

Given the original jurisdiction posture of this case, however, we do not have a complete record before us, and, thus, we cannot review the transcript of the Grant County proceedings to determine whether Judge Frye did or did not issue a verbal ruling sealing such proceedings. In light of the parties' disparate representations as to the existence of such an order and our inability to resolve this quandary based upon the information at our disposal, we cannot conclusively find that the Grant County Circuit Court did, or did not, seal the record of the proceedings held in that court. Accordingly, we grant as moulded Mr. Brooks' requested writ of prohibition and direct the Circuit Court of Kanawha County to conduct further proceedings herein to ascertain whether the documents released to Mr. Brooks pursuant to his FOIA request were protected by a protective order or by an order sealing such records based upon its examination of the transcript of the Grant County proceedings.[16] In making this determination, the circuit court should additionally consider the requirements for the entry of such a protective order set forth in W. Va.Code § 30–3C–3 and W. Va. Tr. Ct. R. 10.03.

Before concluding our decision of this case, we wish to comment upon a final matter that causes us great concern. Although we applaud the zeal with which counsel has represented petitioner Brooks in this matter and recognize the predicament they faced in light of the circuit court's stated refusal to stay the underlying proceedings pending his ruling upon the respondents' motion for a protective order, we do not wish to give the impression that we condone counsel's actions in seeking relief from this Court without affording the circuit court an opportunity to enter an order memorializing the rulings from which their client now seeks relief. It would also have been preferable to have per-

mitted the circuit court to have conducted further proceedings regarding the respondents' motions rather than prematurely requesting extraordinary relief from this Court, which has resulted in lengthy and protracted litigation and has necessitated duplicitous efforts by this Court and the Circuit Court of Kanawha County. In short, "[j]udges are not like pigs, hunting for truffles," *State v. Honaker*, 193 W.Va. 51, 56 n. 4, 454 S.E.2d 96, 101 n. 4 (1994) (internal quotations and citations omitted), and neither are the members of this Honorable Court. Thus, future litigants are encouraged to first exhaust remedies available to them in lower tribunals, if any so exist, before initiating original jurisdiction proceedings herein.

## IV.

### CONCLUSION

In conclusion, we find that Mr. Brooks has satisfied the criteria requisite for the issuance of a writ of prohibition. *See* Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). Accordingly, for the foregoing reasons, we grant as moulded the requested writ.

Writ Granted as Moulded.

Justice ALBRIGHT concurs and reserves the right to file a concurring opinion.

Justice McGRAW dissents and reserves the right to file a dissenting opinion.

ALBRIGHT, Justice, concurring:

While I concur in the result reached in this case, I write separately to express several concerns that I have with the majority opinion. In applying this Court's decision in *Moats v. Preston County Commission*, 206 W.Va. 8, 521 S.E.2d 180 (1999), to the facts of the instant case, the majority overlooks a critical second element to the holdings in that case which address the instantaneous effect of a court's oral rulings. This Court clearly recognized through its holdings in *Moats* that "[g]enerally, an order is effective when a court announces it," and that "the actual

---

**16.** Based upon our resolution of this case, we do not need to address or further consider Mr. Brooks' arguments claiming that certain of his constitutional rights have been violated or otherwise infringed.

physical possession of a written order is not required to effectuate said [oral] order." 206 W.Va. at 10, 521 S.E.2d at 182, syl. pts. 1, 2, in part. What the majority overlooks in applying these principles to the case *sub judice* is that *Moats* does not dispense with the need to reduce oral rulings to writing and to have such orders entered by the trial court. It is significant to note that the order at issue in *Moats* had been "signed contemporaneously with the pronouncement of the order by the mental hygiene commissioner." *Id.* at 12, 521 S.E.2d at 184. Thus, rather than turning on the reduction of an oral ruling to writing, the factual focus in *Moats* was whether physical possession of the written order was a necessary part of effectuating the directive of the order—remanding an *involuntary commitment detainee to the sheriff's custody.*

By failing to recognize the continuing obligation of parties to reduce oral rulings to writing, the majority unnecessarily creates confusion in a settled area of the law. As the majority acknowledged, the "requirement of a definite and specific order is based upon the longstanding principle recognizing that a 'court speaks only through its orders.'" If the majority was seeking to alter this longstanding rule that requires the entry of written orders, I must vehemently disagree with the majority's reasoning on this point.

I concur with the majority's new point of law as stated in syllabus point five with the additional limitation that the entry of a protective order by the trial court, either pursuant to West Virginia Code § 30–3C–3 (1980) (Repl.Vol.2002) or under the terms of Trial Court Rule 10.03, can only operate with regard to the copy of the materials physically contained within the court's files that are subject to the order. Obviously, if those same materials are available elsewhere from an original source or pursuant to express waiver of a privilege, the materials are subject to production from those sources and may be used by a party. In most instances, the protective orders contemplated by the terms of West Virginia Code § 30–3C–3 arise out of the court's obligation to assure confi-

dentiality under situations where the statutory privilege has not been extinguished due to express waiver or through the voluntary dissemination of those materials to third parties.

Separate and apart from the statutory privilege, however, the trial courts are clearly authorized to enter orders limiting access to court files pursuant to the provisions of Trial Court Rule 10.03. Therefore, as the majority finds, when the protections of West Virginia Code § 30–3C–3 are no longer available (due to waiver or availability from an original source), a trial court may still limit access to a copy of the materials actually in a court file. However, pursuant to the express terms of the rule, any order limiting access to court files under Trial Court Rule 10.03 is required to be made with certain express findings that "specify the nature of the limitation, the duration of the limitation, and the reason for the limitation."

McGRAW, Justice, dissenting:

I fail to see how something that is no longer privileged, because it was published, or a doctor waived his or her privilege, can ever become privileged again. While the Circuit Court of Grant County theoretically could have sealed the information, if it did not seal it, I do not believe the Circuit Court of Kanawha County would have that power in this case.

Unless one entitled to a privilege assiduously guards it by requesting protective orders when confidential information is used in open court, I cannot see how a second court could "recover" the lost confidentiality. Simply stated, short of mass hypnosis, the genie can't be put back in the bottle.

For the reasons stated, I must respectfully dissent.