547 S.E.2d 234

**NICHOLAS LOAN & MORTGAGE, INC.,**
a West Virginia corporation, Plaintiff
below, Appellant,

v.

**W.VA. COAL CO–OP, INC.,** a West Virginia corporation and William A. Ray, individually, Defendants below, Appellees,

and

Nicholas Loan & Mortgage, Inc., a West
Virginia corporation, Plaintiff
below, Appellant,

v.

**W.VA. Coal Co–Op, Inc.,** a West Virginia corporation, Gail Ray, individually, and David Ray, individually, Defendants below, Appellees.

No. 28487.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 7, 2001.

Decided March 8, 2001.

E. Scott Stanton, Esq., Summersville, for Appellant.

Ernest V. Morton, Jr., Esq., William C. Garrett, Esq., Webster Springs, for Appellees.

STARCHER, Justice.

In this appeal from the Circuit Court of Nicholas County, we interpret various provisions of the West Virginia Uniform Fraudulent Transfers Act, *W.Va.Code*, 40–1A–1 to –12 [1986] ("the Act"). The case concerns whether a lien filed by a third party against a debtor's assets, with the debtor's approval, constitutes a "transfer" under the Act. The circuit court granted summary judgment, essentially holding that such a lien would not be considered a transfer, and that the actions of the debtor and third party transferee could not be considered "fraudulent" under the Act.

As set forth below, we conclude that the Act specifically defines certain liens as "transfers." Furthermore, the evidence contained in the record raises genuine issues of material fact regarding whether the liens could be considered "fraudulent transfers" under the Act. We therefore reverse the circuit court's ruling.

I.

*Facts & Background*

Defendant-appellee W.Va. Coal Co–Op, Inc., is a West Virginia corporation that buys, refurbishes, and sells mining equipment. The president of W.Va. Coal Co–Op is defendant-appellee Gail Ray; the general manager of the business is her husband, defendant William A. Ray. Mr. Ray receives no income from his wife, who he claims pays him only in food.[1]

Plaintiff-appellant Nicholas Loan & Mortgage, Inc. ("Nicholas Loan") is a small lending institution in Summersville, West Virginia. Over the years, Nicholas Loan lent money to both Mr. and Mrs. Ray and to the various companies with which they were associated.

On September 18, 1995, acting both individually and acting as the "G.M." of W.Va. Coal Co–Op, Mr. Ray signed a note evidencing his promise to repay to Nicholas Loan a loan for $63,956.83 in 48 monthly payments. The loan was secured by various pieces of mining equipment listed in the note.

Soon after executing the note, Mr. Ray and W.Va. Coal Co–Op stopped making monthly payments to Nicholas Loan. Nicholas Loan then learned that some of the

---

1. Mr. Ray testified in a deposition that while W.Va. Coal Co–Op still exists today as a corporation in good standing, the company has "been put out of business."

   Coincidentally, Mr. Ray now works as the general manager of Ray Sales, Inc., a separate business owned by his wife. Ray Sales and W.Va. Coal Co–Op share the same toll-free telephone number, and the office for both companies is in the same location—the Rays' home. As with his work for W.Va. Coal Co–Op Mr. Ray receives no income, and is only paid with food. Ray Sales also purchases, refurbishes, and sells mining equipment, acquiring "probably a million dollars worth" of equipment in the year preceding Mr. Ray's deposition.

mining equipment securing the loan was missing, and Mr. Ray refused to divulge the location of the missing equipment.

One year after Mr. Ray executed the note, on September 18, 1996, plaintiff Nicholas Loan sued defendants W.Va. Coal Co–Op and Mr. Ray to collect the unpaid portion of the loan. Mr. Ray was served with a copy of the complaint, but for unknown administrative reasons, the West Virginia Secretary of State refused to accept service of process for W.Va. Coal Co–Op.

While it is not in the record, Nicholas Loan's brief suggests that Mr. Ray filed a handwritten answer to the plaintiff's complaint on W.Va. Coal Co–Op stationery. In the answer, Mr. Ray did not deny the plaintiff's allegations. After Mr. Ray later failed to appear at hearings set by the circuit court, the circuit court entered a summary judgment against him on March 27, 1997. Nicholas Loan then attempted to execute on the judgment, and took possession of the mining equipment held by Mr. Ray. Nicholas Loan asserts that this equipment's sale value was essentially that of scrap metal.

One year after the circuit court entered its summary judgment order, on March 27, 1998, the Secretary of State finally accepted service of process for W.Va. Coal Co–Op, Inc. The defendants then engaged in a series of actions giving rise to this appeal.

Defendant-appellee Dr. David Ray is the son of defendants William and Gail Ray. Six days after W.Va. Coal Co–Op was served with the complaint, on April 2, 1998, Gail Ray signed three separate promissory notes promising to repay David Ray various amounts of money at 5% interest on or before April 2, 2003. The first note, for $35,000.00, was made on behalf of W.Va. Coal Co–Op. The second note, for $40,000.00, was personally payable by Gail Ray. The final note was a promise to pay David Ray $10,000, and was signed by Gail Ray on behalf of Ray Sales (another family company controlled by Gail Ray).

Following Mrs. Ray's signing of the promissory notes, on April 8, 1998, three liens were filed in the Nicholas County Clerk's office giving David Ray liens against most of the assets owned by W.Va. Coal Co–Op Gail Ray, and Ray Sales, Inc.[2] Dr. Ray later testified that these liens were to secure portions of loans he made throughout the 1990s to his parents and their businesses, and that they had not repaid these loans. Specifically, he stated that the liens were to secure $76,325.13 in debt owed by W.Va. Coal Co–Op;[3] $66,445.00 in debt owed by Gail Ray; and $35,000.00 in debt owed by Ray Sales, Inc.

Nicholas Loan responded to these liens by filing a new complaint[4] against defendants

**2.** The primary lien under dispute in the record is a lien securing David W. Ray's interests against debtor W.Va. Coal Co–Op, Inc.'s property, including "all of the debtor's inventory, now owned or hereafter acquired, and wherever located, including without limitation, accounts receivable, cash, contract rights, and general intangibles."

The lien against Gail Ray is for various vehicles including a "1989 Chev PU ... 1990 Dodge Caravan SE ... 1992 Chev Cav V6/RS ... and all furniture, fixtures, appliances, located in Craigsville, West Virginia, and all cash, contract rights, stock certificates, bank accounts and general intangibles now or hereafter acquired or owned by the debtor." The final lien, against Ray Sales, Inc., covers "all of the debtor's inventory, now owned or hereafter acquired, and wherever located, including without limitation, accounts receivable, cash, contract rights, and general intangibles."

**3.** David Ray indicated that on 14 different occasions between May 28, 1992, and June 28, 1996, he made loans totaling $116,187.46 to W.Va. Coal Co–Op. W.Va. Coal Co–Op allegedly made

57 payments to Dr. Ray totaling $39,862.33 between May 28, 1992 and September 20, 1996 (2 days after Nicholas Loan filed suit) leaving a balance due of $76,325.13. The record is therefore unclear why David Ray had his mother sign a promissory note on behalf of W.Va. Coal Co–Op agreeing to repay him only $35,000.00.

Interestingly, we note that many of the loan repayments by W.Va. Coal Co–Op were made on the same date, using sequentially numbered checks. For instance, three payments to Dr. Ray were made on July 10, 1995, for $500.00, $500.00, and $190.00, using checks numbered 2341, 2342, and 2343.

We also note that many of the loans appear to have been repaid on the day they were made by Dr. Ray. For instance, Dr. Ray loaned the company $1,400.00 on April 8, 1996; on the same day, W.Va. Coal Co–Op made a $1,400.00 repayment to Dr. Ray.

**4.** Specifically, Nicholas Loan filed a second, separate lawsuit against Gail Ray, David Ray and W.Va. Coal Co–Op. The first lawsuit, against only

Gail Ray, David Ray, and W.Va. Coal Co–Op. Nicholas Loan alleged that these defendants had engaged in a scheme in violation of the West Virginia Uniform Fraudulent Transfers Act, *W.Va.Code*, 40–1A–1 to –12 [1986]. Specifically, Nicholas Loan alleged that Gail Ray had, with the assistance of David Ray and with full knowledge of the proceedings against William Ray and W.Va. Coal Co–Op transferred assets of W.Va. Coal Co–Op to David Ray with the intent to hinder, delay or defraud Nicholas Loan.

After the parties engaged in discovery, defendant David Ray filed a motion for summary judgment with the circuit court. Dr. Ray argued that the liens filed with the Nicholas County Clerk were "merely liens only and not transfers, and that they merely grant a lien position." In essence, because no "transfer" of W.Va. Coal Co–Op's property by Mrs. Ray occurred, Dr. Ray argued that he could not have participated in a "fraudulent transfer" under the Uniform Fraudulent Transfers Act.

In an order dated February 22, 2000, the circuit court accepted Dr. Ray's argument, and appears to have concluded that no "transfer" of W.Va. Coal Co–Op's assets occurred. The circuit court specifically held that any rights of Nicholas Loan to W.Va. Coal Co–Op's assets would take priority over any liens held by Dr. Ray. The circuit court therefore granted summary judgment on behalf of David Ray and Gail Ray.[5]

Following the circuit court's summary judgment ruling, the parties agreed that W.Va. Coal Co–Op would "confess judgment" in the amount of $96,393.93.[6]

Nicholas Loan now appeals the circuit court's February 22, 2000 summary judgment ruling.

W.Va. Coal Co–Op and William Ray, was later consolidated with this second lawsuit.

**5.** The circuit court's order stated, in pertinent part:

[T]he Court, in response to David A. Ray's Motion for Summary Judgment, hereby GRANTS the Motion in the following manner:
(a) any judgments, UCC's or liens against W.Va. Coal Co–Op Inc. in favor of David A.

## II.

### *Discussion*

We review the circuit court's February 22, 2000 order *de novo.* We have often stated that we review *de novo* a circuit court's entry of summary judgment under Rule 56 of the *West Virginia Rules of Civil Procedure,* and apply the same standard that the circuit courts employ in examining summary judgment motions. Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). We established the traditional standard for granting summary judgment in Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.,* 148 W.Va. 160, 133 S.E.2d 770 (1963) where we held:

A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

Furthermore, it is settled law that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).

The plaintiff, Nicholas Loan, contends that the circuit court erred in two ways. First, Nicholas Loan argues that the circuit court erred in its legal conclusion that the lien filed by David Ray against the assets of W.Va. Coal Co–Op was not a "transfer" under the West Virginia Uniform Fraudulent Transfers Act. Second, Nicholas Loan argues that factual questions exist regarding whether Gail Ray and David Ray acted in an intentional, fraudulent manner so as to impair Nicholas Loan's ability to collect on the debt owed by W.Va. Coal Co–Op and William Ray, and that summary judgment was therefore improper. We examine these questions in turn.

Ray should be subordinated to any liens against W.Va. Coal Co–Op Inc. and its assets, in favor of Nicholas Loan & Mortgage, Inc., the Plaintiff herein.

**6.** The defendants also agreed, in light of the circuit court's ruling dismissing David and Gail Ray, to dismiss a counterclaim against Nicholas Loan for abuse of process.

## A.

### *Is a Lien a "Transfer" under the Uniform Fraudulent Transfers Act?*

■ The parties in the instant action spar over whether there is evidence sufficient to create a question of fact regarding whether a transfer of W.Va. Coal Co–Op's property occurred. David Ray essentially argues that because the physical possession and control of the property did not change, and because the circuit court ruled that the rights of Nicholas Loan were superior to any lien rights he might hold, no transfer by Gail Ray occurred. Conversely, Nicholas Loan asserts that the liens were filed with the intent to delay, hinder or defraud the rights of Nicholas Loan to repayment of the loans given to W.Va. Coal Co–Op and William Ray.

To resolve these competing positions, the essential question we must address is whether the creation of a lien against the assets of a debtor such as W.Va. Coal Co–Op constitutes a "transfer" under the West Virginia Uniform Fraudulent Transfers Act ("the Act").

The National Conference of Commissioners on Uniform State Laws adopted the Uniform Fraudulent Transfers Act in 1984. *See generally, Uniform Fraudulent Transfers Act (contained in* 7A Uniform Laws Annotated 274 [West, 1999] ). The Act was designed to protect unsecured creditors against debtors who make transfers out of, or make obligations against, the debtor's estate in a manner adverse to the creditors' rights. *See Uniform Fraudulent Transfers Act,* § 3, cmt. 2 ("[T]he purpose of the Act [is] to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors."). West Virginia adopted the Act in 1986. *See* 1986 Acts of the Legislature, Chapter 166.

The Act provides specific definitions for the terms disputed in this case, "lien" and "transfer." A "lien" is defined by the Act, in *W.Va.Code,* 40–1A–1(h) [1986], in the following manner:

> "Lien" means a charge against or an interest in property to secure payment of a debt or performance of an obligation, and

includes a security interest created by agreement, a judicial lien obtained by legal or equitable process or proceedings, a common-law lien or a statutory lien.

The Act also provides us with the following definition of "transfer:"

> "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance.

*W.Va.Code,* 40–1A–1(*l* ) [1986]. *See also, Rich v. Rich,* 185 W.Va. 148, 150, 405 S.E.2d 858, 860 (1991) (applying definition of "transfer" in *W.Va.Code,* 40–1A–2(*l* )).

■ In the instant case, the parties do not allege that either statute is in any way ambiguous. It is a fundamental principle of law that when a statute is clear and unambiguous, we will apply and not construe the statute. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968). *In accord,* Syllabus Point 3, *Michael v. Marion County Bd. of Educ.,* 198 W.Va. 523, 482 S.E.2d 140 (1996). *See also,* Syllabus Point 1, *State v. Jarvis,* 199 W.Va. 635, 487 S.E.2d 293 (1997) (" 'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951).")

■ A plain reading of these statutes leads us to the conclusion that under the West Virginia Uniform Fraudulent Transfers Act, a "lien" includes the creation, with the consent of the debtor, of a security interest in the property of the debtor so as to secure the payment of a debt. The creation of such a lien or other similar encumbrance on the assets of a debtor is a "transfer" under the Act.

The action of Gail Ray, by agreeing[7] to allow David Ray to file a lien against the assets of W.Va. Coal Co–Op to secure the payment of a debt owed to David Ray, was an action "disposing of or parting with an asset or an interest in an asset," and is specifically delineated by the Act as a "transfer." We therefore find that the circuit court erred in its conclusion that the lien filed by David Ray against the property of W.Va. Coal Co–Op was not a "transfer" under the Act.

### B.

### *Did a Fraudulent Transfer Occur?*

■ The primary contention of the parties is whether there is evidence sufficient to raise a genuine issue of fact concerning whether a fraudulent transfer occurred. Nicholas Loan argues that the actions of defendants Gail Ray and David Ray show an intent to delay and hinder Nicholas Loan's ability to recover the money it loaned to W.Va. Coal Co–Op and William Ray. The defendants argue that David Ray legitimately loaned money to Gail Ray and her businesses, and that he was legitimately entitled to some form of protection to ensure that the money was repaid. Dr. Ray asserts, as he did in his deposition, that he simply made a "good business decision" when he filed the liens. The defendants therefore argue that Nicholas Loan has failed to introduce evidence sufficient to suggest that the defendants intended to fraudulently impair Nicholas Loan's rights as a creditor.

The West Virginia Uniform Fraudulent Transfers Act makes transfers by debtors "fraudulent if made under certain circumstances." *Rich v. Rich*, 185 W.Va. at 150, 405 S.E.2d at 860. The Act provides that a creditor may prove that a transfer was fraudulent by showing that the debtor acted with actual intent to hinder, delay or defraud a creditor. *W.Va.Code*, 40–1A–4(a) [1986] states, in pertinent part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) With actual intent to hinder, delay or defraud any creditor of the debtor[.]

The Act sets forth a catalog of expressly nonexclusive factors to aid a court in determining whether the debtor made a transfer, or incurred an obligation, with an actual intent to hinder, delay, or defraud one or more creditors:

(1) The transfer or obligation was to an insider;

(2) The debtor retained possession or control of the property transferred after the transfer;

(3) The transfer or obligation was disclosed or concealed;

(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*W.Va.Code*, 40–1A–4(b) [1986]. The above list of factors "includes most of the badges of

---

7. In the instant case, it appears that the liens were created voluntarily and by an agreement between the debtor, Gail Ray and W.Va. Coal Co–Op, and David Ray. The Act also governs liens created involuntarily, including judicial liens, common-law liens, and statutory liens. *See W.Va.Code*, 40–1A–1(h) and (*l*). These latter forms of liens do not appear to be at issue in this case.

fraud that have been recognized by the courts[.]" *Uniform Fraudulent Transfers Act,* § 4, cmt. (5).

A comparison of the evidence in the record against the factors set forth above suggests that genuine questions of fact exist for resolution regarding whether the defendants transferred the assets of W.Va. Coal Co–Op "[w]ith actual intent to hinder, delay or defraud any creditor."

Nicholas Loan points to many factors listed in *W.Va.Code,* 40–1A–4(b) in support of its case. First, the transfer was made to an "insider," defined by the Act as "a relative of the debtor" or, if the debtor is a corporation like W.Va. Coal Co–Op, "a relative of a ... person in control of the debtor." *W.Va.Code,* 40–1A–1(g)(1)(i) and (1)(g)(2)(vi) [1986]. David Ray, as the son of the president of W.Va. Coal Co–Op, appears to fit this definition. Second, before the transfer was made or obligation incurred by Gail Ray and debtor W.Va. Coal Co–Op, the debtor had been sued by Nicholas Loan. Another factor to consider is that the transfer was of substantially all of the debtor's assets: the lien filed by David Ray covered "all of the debtor's inventory, now owned or hereafter acquired, and wherever located, including without limitation, accounts receivable, cash, contract rights, and general intangibles." [8] The evidence of these factors, taken together, strongly suggests that the defendants intended to hinder, delay or defraud Nicholas Loan.

The defendants, looking to other factors listed in *W.Va.Code,* 40–1A–4(b), contend that Nicholas Loan failed to show the "hallmarks of a fraudulent transfer." For instance, they argue that the debtors—Gail and William Ray and W.Va. Coal Co–Op—retained possession and control of the property transferred after the liens were filed. Furthermore, the transfer or obligation was disclosed and was not concealed, because the liens were publicly filed in the county clerk's office. The debtors did not "abscond." [9] And the value received by Gail Ray and W.Va. Coal Co–Op was not "reasonably equivalent to the asset transferred or amount of the obligation incurred"—on the contrary, the amount of the loans by David Ray far exceeded the amount of the lien.

We have often stated that whether a defendant has acted intentionally in a particular situation is usually a question of fact. *See, e.g., Travis v. Alcon Laboratories, Inc.,* 202 W.Va. 369, 379, 504 S.E.2d 419, 429 (1998). "Proof of the existence of any one or more of the factors enumerated in [*W.Va.Code,* 40–1A–4(b) ] may be relevant evidence as to the debtor's actual intent but does not create a presumption that the debtor has made a fraudulent transfer or incurred a fraudulent obligation." *Uniform Fraudulent Transfers Act,* § 4, cmt. 5. The finder of fact is best situated to "take into account all indicia negativing as well as those suggesting fraud." *Id.,* cmt. 6. We believe that the jury or other fact-finder is best suited to consider the competing factual positions of the parties, and the application of the factors contained in *W.Va.Code,* 40–1A–4(b) to those factual positions.

Having carefully examined the record, we find that the circuit court erred in finding no genuine issues of fact existed for jury resolu-

---

**8.** *Nicholas Loan makes the inference that Gail and/or William Ray, by transferring their interest in their corporate properties to David Ray, intended to make themselves and W.Va. Coal Co–Op "judgment proof." For instance, William Ray testified in a deposition that he has no salary, no retirement pension, and no real or personal property other than some clothes. The home in which Mr. and Mrs. Ray live was transferred to David Ray in 1985, prior to litigation involving another company operated by Mr. Ray.*

**9.** *The defendants argue that the plaintiff also cannot prove that they "removed or concealed assets," as set forth in W.Va.Code, 40–1A–4(b)(7). Conversely, Nicholas Loan suggests that William and Gail Ray removed assets from W.Va. Coal*

Co–Op and placed those assets elsewhere, including with Ray Sales, Inc., and suggests that other assets were concealed. However, we find no suggestion by Nicholas Loan that David Ray participated in those actions.

Furthermore, William Ray testified that W.Va. Coal Co–Op had no material assets because all of the "unmortgaged" assets of W.Va. Coal Co–Op were "purchased" by Ray Sales, Inc. Nicholas Loan has not, however, alleged that this transfer of assets to Ray Sales was in any way fraudulent. Accordingly, we do not consider the application of *W.Va.Code,* 40–1A–4(b)(7) in the instant appeal, and leave the circuit court on remand to determine the statute's applicability.

tion. The record contains evidence strongly suggesting that the debtors, Gail Ray and W.Va. Coal Co–Op, acted with an intent to delay, hinder or defraud Nicholas Loan by allowing David Ray to file liens against the assets of W.Va. Coal Co–Op. We therefore reverse the circuit court's order granting summary judgment to David Ray and Gail Ray.[10]

### III.

#### Conclusion

The February 22, 2000 order of the circuit court is reversed, and we remand this case for further proceedings.

Reversed and Remanded.

---

**10.** Nicholas Loan argues that it is entitled to pursue a remedy directly from defendant David Ray, without specifying what that remedy might be. The circuit court did not address, and the parties did not brief, the question of what relief might be available to Nicholas Loan under the Act. See, e.g., W.Va.Code, 40–1A–7 [1986] ("Remedies of creditors") and –8 [1986] ("Defenses, liability and protection of transferee"). We therefore decline to address the question, and leave the question to the circuit court for resolution on remand.