IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

**FILED**
**November 17, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 19-1014

DENISE JOHNSON,
Plaintiff Below, Petitioner

v.

RUTH ANN PINSON,
Defendant Below, Respondent

Appeal from the Circuit Court of Cabell County
The Honorable Christopher D. Chiles, Judge
Case No. 19-C-178

AFFIRMED

Submitted: October 28, 2020
Filed: November 17, 2020

Andrew S. Nason, Esq.
Daniel T. Lattanzi, Esq.
Pepper & Nason
Charleston, West Virginia
Counsel for Petitioner

Paul A. Ryker, Esq.
Barboursville, West Virginia
Counsel for Respondent
and
John A. Proctor, Esq.
Frazier, Oxley & Proctor, LC
Huntington, West Virginia
Counsel for Mark Pinson

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "A circuit court's entry of summary judgment is reviewed *de novo.*"

Syllabus Point 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994).


2.      "A motion for summary judgment should be granted only when it is

clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not

desirable to clarify the application of the law."  Syllabus Point 3, *Aetna Cas. & Sur. Co. v.*

*Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).


3.      "The circuit court's function at the summary judgment stage is not to

weigh the evidence and determine the truth of the matter, but is to determine whether there

is a genuine issue for trial."  Syllabus Point 3, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d

755 (1994).


4.      "'A trial court is vested with a sound discretion in granting or refusing

leave to amend pleadings in civil actions.  Leave to amend should be freely given when

justice so requires, but the action of a trial court in refusing to grant leave to amend a

pleading will not be regarded as reversible error in the absence of a showing of an abuse

of the trial court's discretion in ruling upon a motion for leave to amend.'  Syllabus point

6, *Perdue v. S.J. Groves & Sons Co.,* 152 W. Va. 222, 161 S.E.2d 250 (1968)."  Syllabus

Point 2, *Lloyd's, Inc. v. Lloyd*, 225 W. Va. 377, 693 S.E.2d 451 (2010).


i

5. In an action to set aside an alleged fraudulent transfer or obligation under the Uniform Fraudulent Transfers Act, West Virginia Code §§ 40-1A-1 to -15 (2018), the plaintiff has the burden of establishing the existence of a creditor-debtor relationship by a preponderance of the evidence.

6. The Uniform Fraudulent Transfers Act, West Virginia Code §§ 40-1A-1 to -15 (2018), should be construed consistently with the basic tenet of corporate law that the corporation and its officers/shareholders are distinct entities.

7. "If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure." Syllabus Point 3, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

8. "Under Article IV, Section 1, of the Constitution of the United States, a valid judgment of a court of another state is entitled to full faith and credit in the courts of this State." Syllabus Point 1, *State ex rel. Lynn v. Eddy*, 152 W. Va. 345, 163 S.E.2d 472 (1968).

9. The Uniform Enforcement of Foreign Judgments Act, West Virginia Code §§ 55-14-1 to -8 (2016), was enacted to facilitate enforcement of foreign judgments and was not intended to alter any substantive rights or defenses which would otherwise be available to a judgment creditor or judgment debtor in an action for enforcement of a foreign judgment.

WALKER, Justice:

Petitioner Denise Johnson filed this civil action against Respondent Ruth Ann Pinson in the Circuit Court of Cabell County, West Virginia. Mrs. Johnson alleged that Mrs. Pinson's husband, Mark Pinson, violated West Virginia's Uniform Fraudulent Transfers Act's (UFTA)[1] prohibition against fraudulent transfers when he conveyed real property to Mrs. Pinson with the intent to hinder, delay, or defraud Mrs. Johnson's attempt to collect on a judgment assigned to her by a third party. The circuit court entered summary judgment in favor of Mrs. Pinson, and Mrs. Johnson appealed.

At first glance this case appears complex—with its tangle of corporations settling a business dispute and entering into a promissory note, coupled with the parties' spouses signing a personal guaranty on that promissory note, and a related $1.9 million confessed judgment in Virginia that was registered in West Virginia. But when we cut through this morass, the question at the center of this case is quite simple: did Mrs. Johnson present evidence demonstrating the existence of a material question of fact regarding Mr. Pinson's status as her debtor within the meaning of the UFTA? Considering the record,

---

[1] W. Va. Code §§ 40-1A-1 to -15 (2018).

we conclude that she did not. We therefore affirm the circuit court's order granting summary judgment to Mrs. Pinson.[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Dennis Johnson and Mark Pinson were officers and shareholders of Producers Coal, Inc. Their wives—Mrs. Johnson and Mrs. Pinson, respectively—are the Petitioner and Respondent in this case. Mrs. Johnson filed this case against Mrs. Pinson on April 18, 2019, in an attempt to set aside a 2015 real property transfer from Mr. Pinson to Mrs. Pinson as a fraudulent conveyance under the UFTA. Mr. Pinson acquired the property located at 101 Ridgewood Road in Huntington, West Virginia, in 1993. Mr. and Mrs. Pinson married in January 2015, and he conveyed the property to her on April 22, 2015.[3]

In the complaint, Mrs. Johnson alleged that "James River Coal Sales, Inc., received a court-ordered judgment against Mark B. Pinson on August 8, 2016 in the amount

---

[2] As explained below, we also affirm the circuit court's order denying Mrs. Johnson's motion to amend the complaint.

[3] Mrs. Johnson filed the complaint four days before her right to bring this claim "extinguished." *See* W. Va. Code § 40-1A-9, in part ("A cause of action with respect to a fraudulent transfer or obligation under this article is extinguished unless it is brought: . . . within four years after the transfer was made or the obligation was incurred[.]"); *see Nathan v. Whittington*, 408 S.W.3d 870, 874 (Tex. 2013) (stating the UFTA is a statute of repose, not a statute of limitations; while statutes of limitations operate procedurally to bar the enforcement of a right, a statute of repose takes away the right altogether, creating a substantive right of a potential defendant to be free of liability after a specified time).

of $1,937,377.00." But this allegation is not supported by the record. Actually, as described below, James River Coal Sales, Inc., received a $1,937,377 confessed judgment against Producers Coal, Inc. Mrs. Johnson claims this confessed judgment was assigned to her. Mrs. Johnson also relies on a personal guaranty to James River Coal Sales, Inc., signed by Mr. Pinson and Mr. Johnson to support her claim that Mr. Pinson is her debtor within the meaning of the UFTA. Mrs. Johnson seeks to set aside the property transfer from Mr. Pinson to Mrs. Pinson so that it can be a source of collection on the confessed judgment.[4]

To better explain the present action, we look to a series of previous events. In 2014, Producers Coal, Inc., settled a financial dispute with James River Coal Sales, Inc., and issued a Promissory Note agreeing to pay James River Coal Sales, Inc., the principal sum of $2,249,438 with interest. The Promissory Note was executed by Mr. Pinson as President of Producers Coal, Inc., on November 25, 2014.[5] That same day, Mr. Pinson and Mr. Johnson personally signed a Payment Guaranty to James River Coal Sales, Inc., which provides, in part, that they "jointly and severally guarantee" to James River Coal Sales,

_____

[4] A memorandum/notice of lis pendens was recorded with the Clerk of the County Commission of Cabell County on April 18, 2019, which referenced the underlying civil action as a pending proceeding that could affect title to Mrs. Pinson's property.

[5] The Promissory Note contained a confession of judgment provision which allowed James River Coal Sales, Inc., to obtain a judgment against Producers Coal, Inc., without further notice.

Inc., "the full and punctual payment when due of all monetary obligations of . . . [Producers Coal, Inc.] . . . arising out of the Promissory Note[.]"

James River Coal Sales, Inc., initiated proceedings against Producers Coal, Inc., in the Circuit Court of the City of Richmond, Virginia, to collect on the Promissory Note. That litigation concluded by a Confession of Judgment entered on September 30, 2016, to James River Coal Sales, Inc., by Producers Coal, Inc., in the principal sum of $1,937,377.[6] There is no evidence that James River Coal Sales, Inc., pursued its right to collect payment from Mr. Pinson or Mr. Johnson under the Payment Guaranty.

Mrs. Johnson maintains that the confessed judgment was assigned to her by James River Coal Sales, Inc., although she did not submit documentation to support that claim. Nevertheless, in May 2017, Mrs. Johnson took steps to register this alleged assignment in the Circuit Court of Cabell County;[7] she filed a Notice of Registration of Uniform Enforcement of Foreign Judgments Act, stating she was the "Assignee Judgment Creditor" of James River Coal Sales, Inc. On this document, Mrs. Johnson listed the defendant as "Produceers [sic] Coal, Inc." and its "Obligor: Mark B. Pinson" and attached

_____

[6] The parties represent that some of the debt at issue had been paid which reflects the disparity between the 2014 Promissory Note ($2,249,438) and the 2016 Confession of Judgment ($1,937,377).

[7] *See* W. Va. Code § 55-14-2 (2016) (setting forth procedure to file a foreign judgment in this State).

the Certification of Official Record from the City of Richmond, Virginia, for the Confession of Judgment against Producers Coal, Inc.

Based on Mrs. Johnson's filing, the circuit court entered an Abstract of Judgment in June 2017 which provides, in part, "Judgment in favor of Plaintiff, James River Coal Sales, Inc., and against the Defendant, Producers Coal, Inc., and Obligor Mark Pinson for $1,937,377[.]" "Judgment assigned to Denise Dawn Johnson via Sale and Assignment Agreement dated March 29, 2017."

After Mrs. Johnson filed the present action to set aside Mr. Pinson's property conveyance, Mrs. Pinson moved to dismiss or, in the alternative, for summary judgment, arguing that Mr. Pinson was not a judgment debtor in the Virginia case as alleged. In the memorandum of law in support of her motion, Mrs. Pinson attached several documents including the Confession of Judgment, Abstract of Judgment, and Promissory Note. Mrs. Pinson stated that the confessed judgment was against Producers Coal, Inc., not against Mr. Pinson. Mrs. Johnson filed a response to the motion to dismiss and attached the Payment Guaranty of Mr. Pinson and Mr. Johnson. On July 25, 2019, the circuit court held a hearing on this motion, and Mr. Pinson, by counsel, made a special appearance.

Following the hearing, Mrs. Johnson moved to amend the complaint to add Mr. Pinson as a defendant. Mrs. Johnson did not concede that Mr. Pinson was an indispensable party in this action because a claim under the UFTA can be brought against

5

a transferee of the property. But, Mrs. Johnson explained that she moved to amend the complaint because "the circuit court appeared to express the opinion that Mr. Pinson may be a necessary party to the case at the hearing."

On October 7, 2019, the circuit court denied Mrs. Johnson's motion to amend the complaint to add Mr. Pinson as a defendant. Because there was no judgment against Mr. Pinson, it found no basis for the motion. The circuit court stated that Mrs. Johnson "has never provided any documentation that she in fact has any right to stand in the shoes of James River Coal Sales, Inc. with regard to its Judgment against Producer's Coal" and her "erroneous or falsified document with the Circuit Clerk of Cabell County, West Virginia does not magically create a legal obligation for a Judgment that does not exist." The circuit court noted that Mrs. Johnson had nearly four years after the transfer of the property at issue and was obviously aware of the transaction when she filed the complaint but neglected to timely join Mr. Pinson.

Also on October 7, 2019, the circuit court granted Mrs. Pinson's motion for summary judgment. It found that all of the evidence produced demonstrated that the confessed judgment was exclusively against Producers Coal, Inc., with Mr. Pinson merely signing documents on the corporation's behalf as its officer. The only reference in the confessed judgment to the word "obligor" is to Producers Coal, Inc., and not to Mr. Pinson in his individual capacity. It further determined that the parties had sufficient time to obtain relevant records regarding the confessed judgment and that there had not been any motions

6

to continue in order to obtain affidavits or deposition testimony. The circuit court found that Mrs. Pinson was entitled to summary judgment as a matter of law.[8] It further criticized Mrs. Johnson's effort to register the confessed judgment as far as her filings set forth that Mr. Pinson was an "obligor." The circuit court found these documents were "false, null and void, and of no effect."

## II. STANDARD OF REVIEW

Mrs. Johnson appeals the order of the circuit court granting summary judgment in favor of Mrs. Pinson. We have held that "[a] circuit court's entry of summary judgment is reviewed *de novo.*"[9] In undertaking a de novo review, we apply the same standard for granting summary judgment that is applied by the circuit court. Under that standard "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."[10] And,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party

---

[8] The circuit court ordered that the 2019 notice of lis pendens be released in order to relieve Mrs. Pinson from a cloud on her property.

[9] Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

[10] Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.[11]

We are mindful that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial."[12]

Mrs. Johnson also appeals the order denying her motion to amend the complaint. This Court typically affords circuit courts broad discretion in ruling upon motions to amend:

> "A trial court is vested with a sound discretion in granting or refusing leave to amend pleadings in civil actions. Leave to amend should be freely given when justice so requires, but the action of a trial court in refusing to grant leave to amend a pleading will not be regarded as reversible error in the absence of a showing of an abuse of the trial court's discretion in ruling upon a motion for leave to amend." Syllabus point 6, *Perdue v. S.J. Groves & Sons Co.,* 152 W. Va. 222, 161 S.E.2d 250 (1968).[13]

## III. ANALYSIS

Mrs. Johnson contends that the circuit court erred in granting summary judgment in two ways. First, she argues that the circuit court misinterpreted the UFTA

---

[11] Syl. Pt. 4, *Painter,* 192 W. Va. 189, 451 S.E.2d 755.

[12] *Id*. at Syl. Pt. 3.

[13] Syl. Pt. 2, *Lloyd's, Inc. v. Lloyd*, 225 W. Va. 377, 693 S.E.2d 451 (2010).

because it does not require her to obtain judgment against Mr. Pinson to pursue her claim. Second, Mrs. Johnson argues that factual issues exist regarding Mr. Pinson's liability for the confessed judgment. She also contends that the circuit court erred in denying her motion to amend the complaint to add Mr. Pinson as a defendant. To put these arguments in proper perspective, we examine them within the context of the UFTA.

The UFTA has been adopted in most, if not all, states,[14] and West Virginia adopted it in 1986.[15] The UFTA "was designed to protect unsecured creditors against debtors who make transfers out of, or make obligations against, the debtor's estate in a manner adverse to the creditors' rights."[16]

The UFTA protects creditors against two kinds of fraudulent transfers: transfers with an actual intent to defraud and transfers that the law considers fraudulent (i.e., constructive fraud). "Actual fraud denotes the actual mental operation of intending to defeat or delay the rights of the creditor. On the other hand, constructive fraud is based on facts and circumstances which courts have said constitute legal fraud, regardless of

---

[14] *In re Sandburg Mall Realty Mgmt. LLC*, 563 B.R. 875, 897 (Bankr. C.D. Ill. 2017).

[15] West Virginia Code § 40-1A-11 provides that the UFTA "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this article among states enacting it."

[16] *Nicholas Loan & Mortg., Inc. v. W. Va. Coal Co-Op, Inc.*, 209 W. Va. 296, 300, 547 S.E.2d 234, 238 (2001).

9

actual intent."[17]  The phrase "constructive fraud" generally refers to those instances where a grantor, indebted at the time, conveys property without receiving valuable consideration. The UFTA provides a variety of remedies for defrauded creditors[18] as well as defenses to liability for debtors and transferees.[19]

In the complaint, Mrs. Johnson pled an actual fraud claim under the UFTA[20] by alleging that Mr. Pinson made the property transfer the "with actual intent to hinder, delay or defraud [Mrs. Johnson] in the collection of her claim."  It also appears that Mrs.

---

[17] *Granberry v. Johnson*, 491 So. 2d 926, 928-29 (Ala. 1986).

[18] *See* W. Va. Code § 40-1A-7 (setting forth creditors' remedies, which include avoidance of a transfer, attachment, and the equitable remedies of injunction and receivership as well as "[a]ny other relief the circumstances may require.").

[19] *See* W. Va. Code § 40-1A-8(a) ("A transfer or obligation is not voidable under § 40-1A-4(a)(1) of this code, against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.").

[20] Under the actual fraud provision of the UFTA,

> [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor[.]

W. Va. Code § 40-1A-4(a)(1); *see Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019) (stating elements of an actual fraudulent transfer under the UFTA include a creditor, a debtor who transferred assets shortly before or after the creditor's claim arose, and actual intent to hinder, delay, or defraud any of debtor's creditors).

10

Johnson pled a constructive fraud claim under the UFTA,[21] by alleging that Mrs. Pinson

did not give reasonably equivalent value in exchange for the property and that Mr. Pinson

was insolvent. For the UFTA to apply, Mrs. Johnson must establish a creditor-debtor

relationship between Mr. Pinson and herself.

### A. The Creditor-Debtor Relationship Element

As indicated, the UFTA only classifies as fraudulent certain transfers made

"by a debtor . . . as to a creditor[.]"[22] The UFTA defines "creditor" as "[a] person who has

---

[21] Under the constructive fraud provision of the UFTA,

> [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor:
> (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

W. Va. Code § 40-1A-4(a)(2); *see Allstate Ins. Co. v. Countrywide Fin. Corp.*, 842 F. Supp. 2d 1216, 1224 (C.D. Cal. 2012) (stating elements of a constructive fraudulent transfer under the UFTA include a creditor, and a debtor who transferred assets, when 1) debtor did not receive reasonably equivalent value in exchange, and 2) debtor was insolvent at the time of the transaction or knew that he/she would shortly become insolvent).

[22] W. Va. Code § 40-1A-4(a)(1).

11

a claim."[23] The term "debtor" is defined as "[a] person who is liable on a claim."[24] And the UFTA defines a "claim" broadly as "[a] right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."[25]

Based on the clear language of the UFTA, we hereby hold that in an action to set aside an alleged fraudulent transfer or obligation under the Uniform Fraudulent Transfers Act, West Virginia Code §§ 40-1A-1 to -15 (2018), the plaintiff has the burden of establishing the existence of a creditor-debtor relationship by a preponderance of the evidence.[26] Mrs. Johnson argues that there are genuine issues of material fact in dispute on the issue of whether Mr. Pinson is her debtor.

Mrs. Johnson argues that the circuit court incorrectly found that because there was no judgment against Mr. Pinson there was no legal support for her cause of action under the UFTA. Mrs. Johnson states that she was not required to obtain a judgment against Mr. Pinson to pursue her claim against him as a debtor because the UFTA defines

---

[23] *Id*. at § 40-1A-1(d).

[24] *Id*. at § 40-1A-1(f).

[25] *Id*. at § 40-1A-1(c).

[26] *See* W. Va. Code § 40-1A-4(c) ("A creditor making a claim for relief under subsection (a) of this section has the burden of proving the elements of the claim for relief by a preponderance of the evidence.").

a claim broadly as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent[.]"[27]

Courts deciding this issue under the UFTA have held that a "creditor" includes a person with unlitigated legal claims against the debtor.[28] In support of this decision, courts point to the "whether or not the right is reduced to judgment" language contained in the definition of "claim."[29] So we agree with Mrs. Johnson that under the clear language of the UTFA, it is unnecessary for her to have a judgment against Mr. Pinson to pursue this claim.[30] But, Mrs. Johnson still has the burden of showing that Mr. Pinson is her debtor. Mrs. Johnson's evidence on this element is undisputed: 1) the Confession of Judgment, 2) the Guaranty of Payment, and 3) the Abstract of Judgment.

When we consider the confessed judgment, Mrs. Johnson has only alleged that James River Coal Sales, Inc., assigned it to her. But that confessed judgment does not

---

[27] W. Va. Code § 40-1A-1(c).

[28] *See e.g.*, *Dominguez v. Eppley Transp. Servs., Inc.*, 763 N.W.2d 696, 702-03 (Neb. 2009); *Granberry*, 491 So. 2d at 926.

[29] W. Va. Code § 40-1A-1(c).

[30] *See* John E. Sullivan III, *Future Creditors and Fraudulent Transfers*, 22 Del. J. Corp. L. 955, 961 & n.19 (1997) (noting that the UFTA authorizes a creditor to "obtain a variety of equitable pre-judgment relief," and "allows a court to appoint a receiver, issue injunctions (including a freeze order against the transferee and transferor), order pre-judgment attachment on the property, or fashion any other provisional remedies as the circumstances of the case may require").

state that Mr. Pinson was ever made indebted to James River Coal Sales, Inc. So even if we assume Petitioner was assigned this confessed judgment, she still has not shown that she has a right to collect that judgment from Mr. Pinson. The Uniform Fraudulent Transfers Act, West Virginia Code §§ 40-1A-1 to -15 (2018), should be construed consistently with the basic tenet of corporate law that the corporation and its officers/shareholders are distinct entities.[31]

Turning to the Guaranty of Payment, it is clear that when Mr. Pinson and Mr. Johnson each personally guaranteed to secure the Promissory Note, they created a contractual obligation to James River Coal Sales, Inc. But their Guaranty of Payment is an obligation separate and distinct from the original Promissory Note.[32]

> The debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation. The undertaking of the former is independent of the promise of the latter; and the responsibilities which are imposed by the contract of guaranty differ from those which are created by the contract to which the guaranty is collateral.[[33]]

Critically, Mrs. Johnson never claimed that James River Coal Sales, Inc., assigned its right to her to collect under the Guaranty of Payment signed by Mr. Pinson and Mr. Johnson.

---

[31] *Motorworld, Inc. v. Benkendorf*, 156 A.3d 1061, 1074 (N.J. 2017).

[32] *Robey v. Walton Lumber Co.*, 135 P.2d 95, 102 (Wash. 1943).

[33] *Schmidt v. McKenzie*, 9 N.W.2d 1, 4 (Minn. 1943) (citation omitted); *accord CoastalStates Bank v. Hanover Homes of S.C., LLC*, 759 S.E.2d 152, 157 (S.C. Ct. App. 2014).

When Mrs. Pinson filed her properly supported motion for summary judgment below, the burden shifted to Mrs. Johnson to produce evidence rebutting the motion:

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.[34]

"To meet its burden, the nonmoving party on a motion for summary judgment must offer more than a mere scintilla of evidence and must produce evidence sufficient for a reasonable jury to find in a non-moving party's favor." [35] And "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic."[36] Mrs. Johnson states that she did not believe it was necessary to make a request under Rule 56(f) to produce further evidence because the record established "the disputed personal guaranty and confessed judgment[.]" This argument lacks merit; Mrs. Johnson erroneously conflates the Guaranty of Payment with the Promissory Note, and neither is disputed.

---

[34] Syl. Pt. 3, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

[35] *Crum v. Equity Inns, Inc.*, 224 W. Va. 246, 254, 685 S.E.2d 219, 227 (2009).

[36] *Id*.

Finally, the Abstract of Judgment that listed Mr. Pinson as an obligor to the confessed judgment was based on Mrs. Johnson's filings to register the Virginia confessed judgment in West Virginia; and she erroneously listed Mr. Pinson as an obligor when the confessed judgment made no reference to him.

"Under Article IV, Section 1, of the Constitution of the United States, a valid judgment of a court of another state is entitled to full faith and credit in the courts of this State."[37] To facilitate enforcement of foreign judgments, our Legislature enacted the Uniform Enforcement of Foreign Judgments Act (Act).[38] The Act governs judgments issued in another state and then registered in West Virginia for purposes of execution/collection. The Act provides that such judgments, once filed in West Virginia, are treated the same as if they were initially issued in West Virginia.[39]

The Uniform Enforcement of Foreign Judgments Act, West Virginia Code §§ 55-14-1 to -8 (2016), was enacted to facilitate enforcement of foreign judgments and "was not intended to alter any substantive rights or defenses which would otherwise be available to a judgment creditor or judgment debtor in an action for enforcement of a

---

[37] Syl. Pt. 1, *State ex rel. Lynn v. Eddy*, 152 W. Va. 345, 163 S.E.2d 472 (1968).

[38] W. Va. Code §§ 55-14-1 to -8 (2016).

[39] W. Va. Code § 55-14-2. Therefore, assuming Mrs. Johnson was assigned the confessed judgment awarded to James River Coal Sales, Inc., she could pursue that claim against Producers Coal, Inc., in circuit court.

foreign judgment[.]"[40] So, Mrs. Johnson cannot alter the substance of the confessed judgment through her paperwork to register it and cause Producers Coal, Inc.'s $1,937,377 liability to now fall on Mr. Pinson. We therefore agree with the circuit court that her attempt to do so is invalid.

For these reasons, Mrs. Johnson has failed to overcome Mrs. Pinson's motion for summary judgment on the essential element of establishing a creditor-debtor relationship between Mr. Pinson and herself.

## B. Denial of Motion to Amend the Complaint

We also conclude that, consistent with the above analysis, the circuit court did not abuse its discretion in denying Mrs. Johnson's motion to file an amended complaint to add Mr. Pinson as a defendant on the basis that amendment would be futile. Mrs. Johnson continues to rely on the same documents discussed above to support her fraudulent transfer action under the UFTA. And, her motion to amend was made after the right to challenge Mr. Pinson's April 2019 property transfer expired. [41]

---

[40] *Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of N. Am., Inc.*, 719 A.2d 993, 996 (Md. App. Ct. 1998), *aff'd*, 741 A.2d 462 (Md. 1999) (quoting *Guinness PLC v. Ward,* 955 F.2d 875, 892 (4th Cir. 1992)).

[41] *See* note 3, *supra*. Mrs. Johnson states that, to the extent she is seeking equitable relief such as rescission or reformation of the deed, there is no statute of limitations. *See Dunn v. Rockwell*, 225 W. Va. 43, 54, 689 S.E.2d 255, 266 (2009) ("Our law is clear that (continued . . .)

17

Under West Virginia Rule of Civil Procedure 15(a), circuit courts are encouraged to look favorably on requests to amend pleadings.[42] But notwithstanding this liberal policy, circuit courts are vested with sound discretion in granting or refusing motions to amend.[43] And "[i]t is not an abuse of discretion to deny a motion to amend if the proposed amendment would be futile; an amendment is futile if the proposed claim would not survive a summary judgment motion."[44] An amendment is also futile if, for example, it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could

---

there is no statute of limitations for claims seeking equitable relief."). In light of our conclusion, it is unnecessary to address this contention. However, courts have found that the UFTA "specifically incorporates pre-existing legal and equitable principles related to the law of fraudulent conveyances insofar as those principles do not conflict with the provisions of the UFTA." *Volk Constr. Co. v. Wilmescherr Drusch Roofing Co.*, 58 S.W.3d 897, 900 (Mo. App. E.D. 2001); *see* W. Va. Code § 40-1A-10 ("Unless displaced by the provisions of this article, the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency or other validating or invalidating cause, supplement its provisions.").

[42] Rule 15(a) permits a party to amend pleadings "only by leave of court or by written consent of the adverse party," and counsels that "leave [to amend] shall be freely given when justice so requires." We have interpreted this language broadly. Syl. Pt. 5, *California State Teachers' Ret. Sys. v. Blankenship*, 240 W. Va. 623, 814 S.E.2d 549 (2018).

[43] *Perdue*, 152 W. Va. at 232, 161 S.E.2d at 257.

[44] *Chegwidden v. Evenson*, 863 N.W.2d 843, 850 (N.D. 2015).

not withstand a motion to dismiss.[45]  For instance, in *Crum v. Equity Inns, Inc.*, this Court found that the circuit court appropriately used summary judgment to discern that no genuine issue of material fact existed, and correctly refused to permit the plaintiff to amend the complaint because there was "no need for the [plaintiff] to waste valuable judicial resources by continuing futile litigation[.]"[46]

Here, in the proposed amended complaint, Mrs. Johnson simply added Mr. Pinson as a defendant.  This change did not alter the substance of the requested relief or Mrs. Johnson's theory of Mr. Pinson's alleged liability on the confessed judgment.  She offered no new theory of potential recovery under the UFTA.  Thus, because the amended complaint, like its predecessor, could not survive Mrs. Pinson's motion for summary judgment, we decline to disturb the circuit court's ruling.

---

[45] *Benton v. Adams,* 56 P.3d 81 (Colo. 2002); *see also Alaska Comm. Fishermen's Mem'l in Juneau v. City & Borough of Juneau*, 357 P.3d 1172, 1178 (Alaska 2015) ("[i]t is within a trial court's discretion to deny such a motion where amendment would be futile because it advances a claim or defense that is legally insufficient on its face.") (citation omitted).

[46] 224 W. Va. at 259, 685 S.E.2d at 232.

## IV.  CONCLUSION

For the reasons set out above, we affirm the October 7, 2019 orders of the Circuit Court of Cabell County denying Mrs. Johnson's motion to amend the complaint and granting summary judgment to Mrs. Pinson.

Affirmed.